UNITED STATES of America,
Appellee,

v.

Thomas Jefferson CLARK, Appellant.

UNITED STATES of America,
Appellee,

v.

Jeff McHENRY, Appellant.

Nos. 71–1257, 71–1287.

United States Court of Appeals,
Tenth Circuit.

March 3, 1972.

Robert D. McDonald, Asst. U. S. Atty. (Richard A. Pyle, U. S. Atty., on the brief), for appellee.

Donald G. Freeman, Oklahoma City, Okl., for appellant Thomas Jefferson Clark.

Sam Harris, Tulsa, Okl., for appellant Jeff McHenry.

Before LEWIS, Chief Judge and McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

Thomas Jefferson Clark and Jeff McHenry were jointly charged in an eleven count indictment with using the United States mail to defraud in violation of 18 U.S.C. § 1341. Specifically, they were charged with devising a scheme whereby through the use of false and fraudulent pretenses and promises, which they knew were false and fraudulent, they obtained some $20,075 from the First National Bank in Porter, Oklahoma, and that in so doing they knowingly caused to be placed in the United States mail some eleven different checks, one check forming the basis for each of the eleven counts.

Trial by jury resulted in a verdict of guilty as to both Clark and McHenry on all eleven counts and each defendant was sentenced to a two year term on each count, the sentences to run concurrently. Clark and McHenry now appeal.

■ Error is first predicated on the denial by the trial court of the defendants' motion for separate trials. At trial, through the testimony of an FBI agent, the Government introduced a statement made by McHenry. This statement was not in any sense a confession, but was essentially a recitation of the financial dealings between the two defendants, the details of which were not in dispute. Nor did it amount to an effort on the part of McHenry to attribute criminal intent to Clark. As a matter of fact, McHenry's statement was made with the full knowledge of his attorney, who had first suggested such, and the statement was thereafter approved as to form by the attorney. There was no objection by either defendant to the introduction of McHenry's statement. Later, Clark and McHenry both testified and each was cross-examined by the Government attorney and by counsel for his codefendant.

In this setting we find no error on the part of the trial court in denying the motion for separate trials. Fed.R.Crim. P. 14 provides that a trial court may grant a severance of defendants upon a showing of resulting prejudice should there be but a single trial. In the instant case, there is no showing of prejudice and the very nature of the case strongly suggests that Clark and McHenry should be jointly tried. McGee v. United States, 402 F.2d 434 (10th Cir. 1968), cert. denied, 394 U.S. 908, 89 S. Ct. 1020, 22 L.Ed.2d 220 (1969). Under the circumstances, we perceive no abuse of discretion on the part of the trial court in denying the motion for separate trials. United States v. Rodgers, 419 F.2d 1315 (10th Cir. 1969). The facts of the instant case are readily distinguishable from Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), where neither of two defendants testified and the statement made by one defendant to the authorities and introduced as a part of the Government's case implicated both defendants. Here, McHenry's statement didn't incriminate, as such, either himself or Clark. And in any event, both Clark and McHenry testified upon trial and each was cross-examined by counsel for the other defendant. Accordingly, the rationale of *Bruton* does not entitle Clark and McHenry to separate trials.

■ At the opening of trial counsel for Clark moved for a continuance on the ground that he had just that day been retained by Clark and was not ready for trial. This motion was denied and Clark predicates error on that ruling. For the same reason McHenry contends his conviction should also be set aside, arguing that having new counsel in the case at such a late date somehow prejudiced him. The trial court's ruling on this motion should be viewed in context.

The indictments in the instant case were returned on March 26, 1970. On April 10, 1970, both defendants were arraigned, at which time each was represented by retained counsel, and the case was set for trial on July 13, 1970. Although the record before us is not too

clear, it would appear that several continuances were thereafter granted to the end that on October 20, 1970, the case was reset for trial on December 7, 1970.

It would further appear that on November 2, 1970, Clark's retained counsel, who had been representing him ever since arraignment, filed a motion to withdraw, citing personal differences which had arisen between the two. Hearing was held on this motion on November 13, 1970, with Clark being personally present in open court. At this hearing counsel indicated that he was prepared for trial, but that Clark had become dissatisfied with his services. Clark clearly indicated his dissatisfaction with counsel and the trial court reluctantly granted the motion to withdraw. At the same time Clark indicated he could make arrangements to retain other counsel, but in connection therewith asked that the trial setting be continued to February 1, 1971. The trial court denied this request for a continuance. The trial of the case had apparently been delayed two or three times and the trial court quite firmly announced that the trial setting of December 7, 1970, would not be changed. It should be pointed out that Clark was at the time incarcerated in the state penitentiary and had been brought from that institution to court for the November 13 hearing. In this regard, Clark indicated that he expected to make bond that very day on the state charge. So, it was in this setting that the trial court denied the motion for a continuance filed by newly retained counsel in behalf of Clark on the morning of the date set for trial. There incidentally is nothing in the record to indicate why Clark did not retain counsel earlier than the day of the trial. The jury was thereupon impaneled during the morning session of court, and testimony was deferred till the court's afternoon session.

A motion for continuance is a matter lying within the sound discretion of the trial court and its ruling is not to be disturbed on review unless there be an abuse of that discretion. United States v. Davis, 436 F.2d 679 (10th Cir. 1971). United States v. Yager, 220 F.2d 795 (7th Cir. 1955), cert. denied, 349 U.S. 963, 75 S.Ct. 895, 99 L.Ed. 1285 (1955), presents a very similar factual situation. There, the defendant's original counsel withdrew some six days before trial. When the case was called for trial defendant's new attorney moved for a continuance on the ground that he had just been employed. The trial court denied the request for a continuance and stated that after the selection of a jury he would give counsel an opportunity to confer with his client before any evidence was received. In that case, on review the trial court was held not to have abused its discretion. United States v. Blosser, 440 F.2d 697 (10th Cir. 1971); Leino v. United States, 338 F.2d 154 (10th Cir. 1964); and Holt v. United States, 267 F.2d 497 (8th Cir. 1959), present factual situations somewhat akin to the present one, and in each instance the denial of a motion for a continuance was held not to constitute an abuse of discretion.

All things considered, we find no abuse of discretion on the part of the trial court in denying Clark's request for a continuance. Clark had more than adequate time to retain counsel and the fact that he retained new counsel just before trial does not automatically entitle him to further delay.

Additionally, we perceive no particular prejudice resulting from the trial court's insistence that the case go to trial on the appointed day. The check kiting operation was not really an involved one, and in any event the details of the several transactions which formed the basis for the prosecution were not disputed. The central issue, as will be developed later, is whether the defendants, or either of them, had any intent to defraud as they passed the checks in question and caused the same to be placed in the United States mails. And the testimony bearing on this matter understandably came from the defendants themselves and was fully developed.

■ As concerns McHenry, our study of the record convinces us that there is no basis for his claim that he was prejudiced also by the trial court's denial of Clark's motion for a continuance.

■ Both defendants claim that the evidence is legally insufficient to support the jury's verdicts. They assert that they had no criminal intent to defraud, but rather that this is an instance where a series of business transactions did not turn out as intended, giving rise to admitted civil liability, but not justifying criminal prosecution.

As indicated, the Government's theory was that this was a check-kiting operation wherein Clark, with a bank balance of $8.12 in a bank in Sand Springs, Oklahoma, and McHenry, with a bank balance of $51.40 in a bank in Porter, Oklahoma, managed to acquire some $20,075 from the Porter bank. The operation was as follows: Clark would give his personal check drawn on the Sand Springs bank in which he had insufficient funds to McHenry; McHenry would deposit that check in his account in the Porter bank and received immediate credit therefor; McHenry would thereupon give his personal check to Clark who would immediately cash the same or use it to buy cars, Clark being in the automobile business. The checks here in question given McHenry by Clark did not clear and were never honored by Clark's bank. It was in this manner that the Porter bank sustained a loss of some $20,075. Evidence also showed that Clark gave McHenry a certain sum of money for each transaction, such payment being for the "inconvenience" occasioned McHenry.

As indicated, the defendants did not in anywise contest the giving and receiving of checks as shown by the Government's witnesses, but each testified that in so doing he had no intent to defraud. It was their position that it was at all times their intent that Clark would buy automobiles out of the proceeds derived from the checks given him by McHenry, and would then sell the vehicles at a profit and put the proceeds in his checking account in the Sand Springs bank, to the end that his checks to McHenry would hopefully clear, sooner or later. In other words, as McHenry testified, the only purpose of the scheme was to give Clark the use of the money involved for the period of three to five days that it would take for Clark's checks to McHenry to clear Clark's bank.

A case closely akin to the present one is Deschenes v. United States, 224 F.2d 688 (10th Cir. 1955). The check-kiting scheme there was similar in all important details to the one here under consideration. In that case we rejected the argument that no scheme to defraud had been shown since it was the intent of the defendants to ultimately pay the kited checks, citing United States v. Lowe, 115 F.2d 596 (7th Cir. 1940), cert. denied, 311 U.S. 717, 61 S.Ct. 441, 85 L.Ed. 466 (1941), as a complete and conclusive answer to such contention. In *Lowe,* as here, as well as in *Deschenes,* the plan was to obtain instant checking account credit based on the time required by the transferring of a check from one bank to another and in *Lowe* such credit was held to be in itself a "thing of value."

So, even assuming an intent on the part of Clark and McHenry to repay, sometime, the kited checks, which line of testimony of course did not necessarily have to be believed by the jury, under *Deschenes* the Government still established a prima facie violation of the statute in question. The defendants took the stand and in effect admitted their involvement in each of the transactions, but denied any criminal intent. Such posed an issue of fact for the jury. The jury has now resolved this issue adversely to Clark and McHenry, and their determination of the matters finds support in the record.

■ The defendants here make complaint about the trial court's instruction to the jury. However, upon trial neither defendant raised any objection to any instruction as required by Fed.R. Crim.P. 30. Our study of the instruc-

tions here objected to by the defendants leads us to conclude that there is no such plain error as would impel us to act, sua sponte, in order to avoid a miscarriage of justice.

Complaint is also made that the sentences imposed constitute cruel and unusual punishment. As indicated, Clark was sentenced to two years on each of eleven counts, to be served concurrently. McHenry received the same sentence and apparently was later placed on probation. Suffice it to say that the sentences being well within the limits prescribed by the statute, this argument is devoid of merit.

Judgments affirmed.