**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luther Ben LONG, Defendant-Appellant.**

No. 82–1504.

United States Court of Appeals,
Tenth Circuit.

April 18, 1983.

Charles H. Froeb, Tulsa, Okl., for defendant-appellant.

Gerald Hilsher, Asst. U.S. Atty., Tulsa, Okl. (Frank Keating, U.S. Atty. and Philard L. Rounds, Jr., Asst. U.S. Atty., Tulsa, Okl., on the brief), for plaintiff-appellee.

Before McKAY, BREITENSTEIN, and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Luther Ben Long appeals his conviction by a jury on nine counts of possession of stolen mail, violations of 18 U.S.C. § 1708. He contends on appeal that the trial court erred (1) in not suppressing evidence obtained from a car Long was driving because the stop and search of the car allegedly violated Long's Fourth Amendment rights; (2) in not severing Long's trial from that of a codefendant; and (3) in not granting Long's motion for acquittal on the ground that the government did not prove beyond a reasonable doubt that Long possessed the mail·in question.

Over approximately a three month period Postal Inspector C.E. Welch investigated an unusually high number of thefts of mail from curbside rural mailboxes in the Tulsa, Oklahoma area. He learned that the mail was stolen in order to carry out a "split deposit" scheme that works as follows. The thief takes outgoing mail from a private mailbox—often curbside mailboxes because they are far from the house and can be rifled from a car. The thief hopes to obtain envelopes containing checks mailed in payment for services or credit accounts. The householder's check, although made out to a third party, contains the householder's name and address, the name of the bank on which the check is drawn, and the householder's account number in that bank. The thief has his own set of worthless checks. He makes out one of these checks to the householder. He then goes to the householder's bank, fills out a deposit slip in the householder's name and account number, and, posing as the householder, deposits the worthless check less a certain amount of cash. The householder's name and account number match the bank's records, so the bank hands the thief the cash and deposits the fictitious remainder to the householder's account.

As Welch's investigation progressed, he developed a list of people and cars he believed were involved in the mail thefts and split deposits. One of the people was Debora Adkins, Luther Ben Long's wife or girlfriend, and one of the cars was a blue and white Chevrolet Debora Adkins owned. On the morning of December 14, 1981, Welch was watching Adkins' house and saw parked there a black Thunderbird with

Oklahoma license number ZZH–1254. He had not encountered the Thunderbird before, so he ran a registration check on it; the check showed the owner to be Michael McNatt. Welch abandoned his surveillance at 9:00 a.m. without having observed any activity at the house or involving the car. Later that day Welch received reports that mail had been stolen from several curbside mailboxes in Owasso, Oklahoma. Only one box had contained outgoing checks. Welch spoke with the owner of that mailbox and learned that her checking account was at the First Bank of Owasso. He then notified the bank of the possibility of a split deposit attempt. After contacting the bank, Welch spoke with the Owasso Police Department dispatcher. He described the split deposit scheme to the dispatcher, saying that he anticipated a split deposit attempt at the First Bank of Owasso. He gave the dispatcher descriptions of four vehicles; one was the black Thunderbird he had seen that morning, which he described by make, color, year, and license number. Welch requested the Owasso police to stop any of the vehicles if the bank reported an attempt to execute the split deposit scheme.

The dispatcher called Officer Clifford Motto to the station and relayed to him the information received from Welch. The record does not disclose exactly what the dispatcher told Motto. However, Motto testified that he received a note from the dispatcher containing the list of cars, the information that the cars were connected with a mail theft ring, and the instruction that if the bank reported a split deposit attempt any of the cars seen should be detained.

After receiving this information, Motto returned to his car and resumed patrolling. He drove by the bank, which was near the police station. The bank had not reported a split deposit attempt, but as Motto passed the bank he saw the black Thunderbird pull out of the bank's parking lot onto the street. Motto checked the Thunderbird's license number against his list and verified

that it was the car described by Inspector Welch. Motto radioed for a backup unit, followed the car for about twelve blocks, and pulled it over. Motto had not observed any traffic violations by the driver of the car.

After stopping the Thunderbird, the driver, who was defendant Long, got out and walked toward Motto's patrol car. Motto got out of his car, and the two men stopped somewhere between the cars to talk. At this point the backup officer, Chief Edmond Reyes of the Owasso Police Department, arrived on the scene. Officer Motto asked Long for his driver's license. When Long could not produce one, Motto and Reyes placed him under arrest. Reyes then approached the parked Thunderbird to question its occupants. There were three people in the car: Debora Adkins in the front seat, Quinion Ray Leigh in the back seat, and another woman, who was not indicted, also in the back seat. Reyes asked Adkins to identify herself. She reached for a purse that was sitting next to her on the seat to retrieve a driver's license. Reyes testified that he observed the purse in plain view and that the purse was so stuffed with checks and mail it could not be closed. He testified that from his vantage point outside the car he could readily identify the protruding material as checks and mail. Officer Motto, who shortly thereafter approached the car, also testified to seeing the purse, checks, and mail in plain view on the front seat. At this point Reyes confiscated the purse and its contents, removed the items to his patrol car, and placed the three remaining occupants of the Thunderbird under arrest.

None of the arrestees could produce evidence of ownership of the car.[1] Therefore, when the four were taken to jail the police had the car towed and impounded. Prior to the impoundment, a third Owasso policeman performed a routine inventory of the car's condition and contents. During this inventory the officer opened the Thunderbird's trunk and discovered a bag that he

---

1. The next day Quinion Ray Leigh, the occupant in the back seat, produced documents showing his ownership of the Thunderbird, and the car was released to him.

testified was overflowing with mail and checks. He took the bag and its contents to the police station.

Luther Ben Long, Quinion Ray Leigh, and Debora Adkins were each charged with nine counts of possession of stolen mail. Leigh and Long were tried together. At the trial, checks recovered from both the purse and the trunk were introduced. A fingerprint expert testified that Long's prints were on mail found in the trunk and the purse. Also, a young girl identified Long as the man with a blue and white car who had removed mail from the box at her home that same day. Long was convicted of all nine counts; Leigh was acquitted of all nine.

▆▆▆ We first address whether the purse and its contents and the bag and its contents should have been suppressed. We believe the issue turns on the propriety of the initial stop. At the time Motto first saw the Thunderbird pull away from the bank no crime had been reported. However, Motto had reason to consider the possibility that specific criminal activity had occurred; he had more than an inarticulate, inchoate hunch. He was aware of the split deposit scheme, he knew of the possibility of an attempt on that bank that day, and he knew that a black Thunderbird with that license number was in some way connected with the scheme. An officer's reasonable, articulable suspicion of criminal activity gives rise to the power to stop, identify, and briefly question the persons suspected. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams,* 407 U.S. 143, 145–48, 92 S.Ct. 1921, 1922–1924, 32 L.Ed.2d 612 (1972); *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–695, 66 L.Ed.2d 621 (1981). The circumstances in which Motto encountered the Thunderbird and reasonable inferences therefrom supported his decision to stop the car and investigate further. *See, e.g., United States v. Montgomery,* 561 F.2d 875, 878–79 (D.C.Cir.1977).

▆▆▆ Having properly stopped the car, Motto could ask the driver to identify himself. *Adams v. Williams,* 407 U.S. at 146, 92

S.Ct. at 1923. When Long admitted that he did not have a driver's license, Motto could arrest him for driving without a license. *See* Okla.Stat.tit. 47, § 6–112; *Brantley v. State,* 548 P.2d 675, 676 (Okl.Cr.App.1976). Similarly, once the Thunderbird was lawfully stopped, Reyes and Motto had the right to approach the car and look into it to question its occupants. They also had the right to seize apparent evidence of a crime—the purse and its contents—that was in plain view on the front seat. *Colorado v. Bannister,* 449 U.S. 1, 4, 101 S.Ct. 42, 43, 65 L.Ed.2d 1 (1980); *Coolidge v. New Hampshire,* 403 U.S. 443, 465–73, 91 S.Ct. 2022, 2037–2042, 29 L.Ed.2d 564 (1971). After viewing the purse and its contents, the police had probable cause to arrest the remaining three people in the car. In addition to Motto's previous information, they now had tangible evidence of stolen mail. Given this chain of events, the purse and its contents were properly seized and need not have been suppressed.

▆▆▆ Reyes and Motto were empowered to arrest the four and take them to the Owasso police station. Because none of the four could establish ownership of the Thunderbird, the police could properly impound the car until ownership could be ascertained. Taking an inventory of a car before impounding it is a standard procedure that protects the police from claims concerning the car's contents. There is nothing improper in this procedure, especially when none of the persons detained can show ownership of the vehicle. The bag and its contents discovered pursuant to the inventory were properly seized. *See United States v. Martin,* 566 F.2d 1143, 1145 (10th Cir.1977); *United States v. Reese,* 561 F.2d 894, 903 n. 17 (D.C.Cir.1977).

▆▆▆ Long next contends that the trial judge erred in refusing to grant his severance motion. We disagree. Severance is not granted as a matter of right, but only when the defendant would be prejudiced by a joint trial. *United States v. Van Scoy,* 482 F.2d 347, 348–49 (10th Cir.1973). To establish that the trial court abused its dis-

cretion in denying severance, the defendant must show that prejudice to his case resulted from the denial. *United States v. Ready,* 574 F.2d 1009, 1015 (10th Cir.1978). No such showing was made here. The nature of the case suggests that a joint trial would be appropriate. Long and his codefendant Leigh were jointly indicted for the same counts of possessing mail found in the car in which they were both stopped leaving the bank. *See United States v. Clark,* 456 F.2d 1375 (10th Cir.1972). The trial lasted only two days. The record does not show any confusion of evidence between defendants. The strongest evidence was against Long, and the jury could easily distinguish that applicable to him from that applicable to Leigh.

Finally, we believe that the evidence presented at trial was sufficient to support the jury's verdict and, therefore, that Long's motion for acquittal was properly denied. In considering a postconviction motion for acquittal, the trial court applies the appellate standard for review of sufficiency of evidence: whether the evidence and reasonable inferences therefrom, viewed in the light most favorable to the prevailing party is sufficient to support the verdict. *E.g., United States v. Downen,* 496 F.2d 314, 318 (10th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974); *Goff v. United States,* 446 F.2d 623, 624 (10th Cir.1971). Here the location of the purse on the front seat of the car between Long and Adkins, the location of the bag in the trunk of the car, the fingerprint evidence introduced through expert testimony, and the reasonable inferences from these facts and other testimony were sufficient to support the jury's verdict. The trial court therefore properly exercised its discretion in denying the motion for acquittal.

AFFIRMED.