UNITED STATES of America,
Plaintiff-Appellee,

v.

William Harry HACK, Jr., Lucas Clinton
Owens, Defendants-Appellants.

Nos. 85–1068, 85–1079.

United States Court of Appeals,
Tenth Circuit.

Jan. 23, 1986.

Roger C. Elletson, Cheyenne, Wyo., for defendant-appellant Lucas Clinton Owens.

Bert Ahlstrom, Jr., Cheyenne, Wyo., for defendant-appellant William Harry Hack, Jr.

Richard A. Stacy, U.S. Atty., and Francis Leland Pico, Asst. U.S. Atty., Cheyenne, Wyo., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LO-GAN, Circuit Judge, and WESLEY E. BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the

---

\* Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, is sitting by designation.

determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

These are appeals from judgments of conviction entered in the United States District Court for the District of Wyoming following a jury trial. Defendants Lucas Clinton Owens and William Harry Hack were convicted of conspiring to commit air piracy in violation of 18 U.S.C. Sec. 371.[1] The jury also found Hack guilty of attempted air piracy in violation of 49 U.S.C. Sec. 1472(i).[2] The court sentenced Hack to a fifty-year prison term for attempted air piracy. This sentence is to run concurrently with a five-year prison sentence each of the defendants received for the conspiracy conviction. The defendants appeals their convictions and sentences on a number of grounds. Their claims are: (1) the court erred in admitting each of their confession statements into evidence upon a finding that each of these statements was a product of a valid waiver of his *Miranda* rights; (2) they were deprived of a fair trial because they were required to wear shackles and handcuffs throughout the jury trial; (3) the court erred in denying Hack's motion for judgment of acquittal at the close of the Government's case-in-chief on the basis of insufficiency of the evidence to sustain a conviction on attempted air piracy; (4) the court abused its discretion in sentencing Hack to the "maximum allowable terms of confinement for the crimes charged" as violative of the Eighth Amendment against cruel and unusual punishment; and (5) the court erred in denying

Owens' motion for severance of his case from that of his co-defendant Hack. Following a careful review of the record, we conclude that the defendants' contentions to be without merit. We sustain each of their convictions and sentences on all counts.

Both Owens and Hack were inmates who were serving their sentences in the Nevada State Prison. On February 18, 1984, they were aboard a prisoner-transport plane on a flight from Visalia, California to Rock Springs, Wyoming, where Owens and Hack had been scheduled to appear separately in state courts on criminal matters then pending against each of them. There were six other inmates in this plane, in addition to the pilot, Gary Harrington, and the co-pilot who also served as the armed guard, Diane Witt. All of these inmates were fettered by physical restraints. Each of them wore a leg iron and was handcuffed to a belly chain that threaded through the inmate's clothing. When the plane departed from California, Owens selected the seat directly behind the co-pilot. He was very inquisitive of the technical aspects of the plane and its performance capabilities. His questions to Harrington and Witt were about the plane's fuel reserve, how far and high it could fly and the numbers and locations of the scheduled stops they intended to take for services.

The plane made an intermediary stop at Elko, Nevada in the afternoon for flight services. Witt allowed the inmates to deplane for the use of the restroom facility in the airport terminal. When they resumed

**1.** Title 18 U.S.C. Sec. 371 states in pertinent part: "If two or more persons conspire ... to commit any offense against the United States ... in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

**2.** Title 49 U.S.C. Sec. 1472(i) states in pertinent part: "Whoever commits or attempts to commit aircraft piracy, as herein defined, shall be punished (A) by imprisonment for not less than 20 years.... (2) As used in this subsection, the term 'aircraft piracy' means any seizure or exercise of control, by force or violence or threat

of force or violence, or by any other form of intimidation, and with wrongful intent, of an aircraft within the special aircraft jurisdiction of the United States." The term "special aircraft jurisdiction of the United States" is defined in Title 49 U.S.C. Sec. 1301(38) to include any civil aircraft of the United States "while that aircraft is in flight, which is from the moment when all external doors are closed following embarkation until the moment when one such door is opened for disembarkation or in the case of a forced landing, until the competent authorities take over the responsibility for the aircraft and for the persons and property aboard."

their journey in the evening to Evanston, Wyoming, Owens had switched seats with Hack, whose seat butted against and was directly behind the co-pilot's seat. Owens' explanation for changing seats with Hack was that he wanted to have a better scenic view, although it was dark outside and a film of frost had overlaid on all of the exterior window panes in the passenger cabin. The plane landed at Evanston at about 7:15 p.m. It was a very cold evening. The inmates were directed to go inside the terminal building while the plane was being serviced. Hack pretended that he needed to use the restroom facility. It appeared that during this unobserved opportunity Hack managed to slip out of his belly chain by stepping over it. To disguise that he had unfettered himself, Hack tucked the chain back into his pants. His ruse passed the scrutiny of the pilot and the guard when he re-entered the plane.

At approximately 8:00 p.m., the flight service station at Rock Springs gave its clearance for the plane to begin its descent course on final approach into Rock Springs, Wyoming, which was the final destination for Hack and Owens. Hack decided that this was the last moment which they would have to implement their escape plan. Hack stook up from his seat, turned around swiftly and threw his loose chain around the neck of the co-pilot, Witt. Witt tried to extricate herself from the tightening noose by holding the chain off her throat with her left hand while fighting with the other one to prevent Hack from taking hold of her service revolver. During the struggle, Witt, with the assistance from the pilot, was able to retrieve a gun she had stowed in her flight bag and fired-off a shot which struck Hack. After Hack released the strangle hold around her neck, Witt soon restored control of the inmates. The pilot,

who was also wounded by the bullet that had passed through Hack's mouth, landed the plane at Rock Springs a short time later.

Agent Russell Nielsen from the F.B.I. interviewed Owens and Hack on February 20 and 21, while they were in the custody of the state police. Prior to questioning, Nielsen advised each of them of his *Miranda* rights. Each of the defendants acknowledged his understanding by signing a standard Waiver of Rights Form commonly used by the F.B.I. Owens told Nielsen that he had some training in flying an aircraft and that he recalled his questions to the pilot and co-pilot about the plane's performance capabilities. He admitted that he had spoken with Hack, whom he met in the Nevada State Prison, about their escape plan to Fort Collins, Colorado by hijacking the plane while it was enroute to Rock Springs. He further stated that he knew Hack had gotten his belly chain loose at Evanston and that they discussed that Hack was to seize control of the plane before it landed at Rock Springs. Hack's recanted statement to Nielsen essentially corroborated that of Owens, although in his first statement he refused to implicate Owens for his role in planning their escape to Fort Collins. Hack admitted that he intended to obtain the co-pilot's revolver by strangling her with his belly chain. Each of their oral statements was redacted by Nielsen, who advised the defendants of their *Miranda* rights again before asking them to ratify the substances of their extra-judicial admissions. By signing another Waiver of Rights Form, each of the defendants manifested his concurrence in the contents of the written statements. After hearing Nielsen's testimony concerning the defendants' challenge on the voluntariness of their confessions,[3] the court found the

---

**3.** Although 18 U.S.C. Sec. 3501(a), which codifies the rule announced in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), provides for a separate hearing outside the presence of the jury to determine the voluntariness issue when timely raised by the defendant, defendants here did not object, and the procedure followed by the court is not an issue

on appeal. *See Pinto v. Pierce*, 389 U.S. 31, 32, 88 S.Ct. 192, 193, 19 L.Ed.2d 31, 33 (1967) (per curiam) (trial court did not commit reversible error by conducting voluntariness hearing in the jury's presence when counsel consented to the procedure chosen by the court and the judge found the statement was voluntarily given). It is noted that Owens moved to exclude his con-

Government had met its burden in establishing that the statements given by the defendants without the presence of their counsel were voluntarily made. Both defendants chose to testify at trial. Upon the specific instructions to the jury that each of the inculpatory statements should only be considered against the declarant, the court admitted these confessions into evidence.

On appeal, the defendants challenge the district court's finding that their waivers and subsequent confessions were voluntarily, knowingly, and intelligently made. The defendants, however, neither dispute that they were properly informed of their *Miranda* rights, nor do they deny that each of them had signed a form waiving those rights, before the interrogations began. Hack claims that he acceded to Nielsen's request because he was in pain from the gunshot wound in his mouth. Owens asserts that he signed the waiver because he was "tired of the whole mess" and upon the impression by Nielsen that counsel's service would be unnecessary.

█ In a custodial interrogation, a suspect who has been advised of his rights can "waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 706–07 (1966). An express written or oral statement or waiver by a defendant of his right to remain silent or of the right to legal assistance of counsel, though not conclusive, is "usually strong proof of validity of that waiver." *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (1979). Each of the defendants had been informed of his *Miranda* rights twice prior to questioning of and obtaining a waiver from each of them. During the interviews that took place two days following the incident, Nielsen observed that both defendants remained mentally alert and were conversant

with the details of the hijacking. While Hack's treating physician did not dispute that Hack was feeling uncomfortable from his mouth wound, Dr. Happel did not consider Hack's injury was so serious that it would require a prescription of analgesic medication other than *Novocain*. *Cf. Greenwald v. Wisconsin*, 390 U.S. 519, 520, 88 S.Ct. 1152, 1153, 20 L.Ed.2d 77, 79 (1968) (per curiam). There is nothing in the record to suggest that either one of them was mistreated, coerced, or lacked the capacity to understand his rights which he could have exercised any time during the interrogation had he chosen to do so. We find, under the totality of the circumstances surrounding the statements made by the defendants, the record fully supports the district court's findings that each of their waivers was "voluntarily, knowingly, and intelligently" given. The district court's decision to admit evidence of the confessions was proper.

█ In a conference held in the Judge's chambers on the morning of the day set for trial, the Government requested that the defendants be tried in shackles. The Government argued that the threats to courtroom security inherent in the defendants' propensity to violence as demonstrated by the defendants' prior felony convictions and the nature of the crimes with which they were being charged justified the use of physical restraints. The Government reiterated the statements given to the F.B.I. by Owens and Hack that both of them claimed that they had committed numerous murders and armed robberies in several states.[4] To further support its position, the deputy marshal advised the court that his office had received reliable information from other law enforcement agencies that the defendants had been planning to escape. Counsel for defendants objected to the Government's request, noting that such restraints would have an

fession statement in a pre-trial hearing, but neither party offered any evidence or testimony to support its position until the trial began.

**4.** The record indicates that Owens and Hack were extradited from Nevada to Rock Springs, Wyoming to appear in criminal proceedings, in which they were prosecuted for and convicted of aggravated armed robbery and first degree murder.

adverse effect on the jury and would impair the defendants' ability to obtain effective legal assistance. The judge, upon considering the uncontroverted information of the Government and believing courtroom security to be a concern, ordered that the defendants be restrained in an appropriate manner in view of the attendant circumstances. The defendants now argue that the court abused its discretion in requiring them to appear in shackles and handcuffs before the jury and thereby deprived them of a fair trial. We find under the circumstances presented before the court that its decision to shackle the defendants was appropriate and that the defendants were not denied a fair and impartial jury trial.

While a defendant in a criminal case is presumed innocent and, therefore, should be accorded with the indicia of innocence in a jury trial, *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126, 130 (1976), his right to appear before the jury unfettered from physical restraints is not unqualified. *See Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In some circumstances where there are compelling reasons which would justify the use of physical restraints, the prophylactic purpose of the general prohibition against the presence of shackles to insure a fair jury trial must necessarily yield to the competing interests of courtroom participants for the safe conduct and orderly progress of the trial. *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir.), *cert. denied*, 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656 (1951); *Zygadlo v. Wainwright*, 720 F.2d 1221, 1223 (11th Cir.1983), *cert. denied*, 466 U.S. 941, 104 S.Ct. 1921, 80 L.Ed.2d 468 (1984). Since it is beyond question that the trial judge is in the best position to assess "the extent to which security measures should be adopted to prevent the disruption of the trial, harm to those in the courtroom, (and) escape of the accused," *United States v. Samuel*, 431 F.2d 610, 615, (4th Cir.1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971); *Illinois v. Allen, supra*, the decision to impose appropriate means in restraining, even to the extent of shackling, a

defendant lies within the informed discretion of the trial court and will not be disturbed on appeal unless that discretion was clearly abused. *Guffey v. United States*, 310 F.2d 753, 754 (10th Cir.1962); *United States v. Garcia*, 625 F.2d 162, 167 (7th Cir.), *cert. denied*, 449 U.S. 923, 101 S.Ct. 325, 66 L.Ed.2d 152 (1980); *see also Illinois v. Allen, supra* (the Supreme Court has recognized that shackling of a defendant is permissible when necessary to control his contumacious behavior at trial, although it should only be used "as a last resort." 397 U.S. at 343–44, 90 S.Ct. at 1060–61, 25 L.Ed.2d at 359).

Turning our attention to the record presented in this appeal, we find that the situation with which the trial court was faced sufficiently justified its decision in choosing the security measures in the manner it deemed appropriate under the circumstances. These defendants were on trial for serious breach of the law, upon the allegations of participating in a conspiracy to commit air piracy and attempted air piracy—a conviction of the latter offense carries a minimum twenty-year prison sentence. There was substantial and credible information presented to the judge about the defendants' potential dangerousness and their predisposed violent temperament. Less than six months before this trial, the defendants had been convicted in Wyoming state court of aggravated armed robbery and first degree murder. The fact that the defendants had planned to escape by attempting to forcibly seize control of the aircraft while it was in flight in total disregard of the safety of the others on board manifestly supports the judge's reasonable belief that the defendants, if not properly restrained, might try to escape or attempt to do violence during the trial. Each of the defense counsel was given the opportunity not only to voice an objection to the Government's request to shackle the defendants, but also to challenge any of the potential jurors during *voir dire* whose deliberation could be affected by the sight of the defendants in shackles.

We are not unmindful that the general policy does not favor trying an accused in shackles because this "might have a significant effect on the jury's feeling about the defendant." *Illinois v. Allen, supra,* 397 U.S. at 344, 90 S.Ct. at 1061, 25 L.Ed.2d at 359. Such a practice, however undesirable, may be considered by the trial court in exceptional circumstances where there is a substantial need to protect the safety of the court and its participants, to prevent a threatened escape, to uphold the integrity and orderly decorum of the proceeding, or to respond to any other manifest necessity. The extent to which the security measures are needed should be determined by the trial judge on a case-by-case basis by "considering the person's record, the crime charged, his physical condition, and other available security measures." *Harrell v. Israel,* 672 F.2d 632, 638 (7th Cir.1982) (per curiam). We find that the record reflects the district judge carefully weighed all relevant factors based on the uncontroverted information available to him in considering the most appropriate precautionary security measures. His reasons for imposing physical restraints were sufficiently documented. We conclude under the circumstances presented in this case that the court's order requiring the defendants to be shackled throughout the trial neither deprived the defendants of their right to a fair trial nor constituted an abuse of discretion.

■ Hack next seeks a review of the district court's ruling in denying his motion for judgment of acquittal pursuant to Rule 29, F.R.Crim.P. He has argued, as he did in the court below, that the Government's evidence, independent of his confession statement, was insufficient as a matter of law to prove him sane beyond a reasonable doubt and that the court erred in failing to grant his motion of acquittal at the close of the Government's case-in-chief. Hack's counsel then put on his defense by calling Hack to testify as one of his witnesses. At the close of his evidence, Hack failed to renew his Rule 29 motion. Since our decision in *Hughes v. United States,* 320 F.2d 459, 460 (10th Cir.1963), *cert. denied,* 375

U.S. 966, 84 S.Ct. 483, 11 L.Ed.2d 415 (1964), we have consistently held that a "defendant who moved for a judgment of acquittal at the close of the government's case must move again for a judgment of acquittal at the close of the entire case if he thereafter introduces evidence in his defense because, by presenting such evidence, the defendant is deemed to have withdrawn his motion and thereby to have waived any objection to its denial." *United States v. Lopez,* 576 F.2d 840, 842 (10th Cir.1978). In any event, our review of the record in the light most favorable to the Government convinces us that at the time Hack committed the unlawful acts he "was mentally capable of knowing what he was doing, he was mentally capable of knowing (they were) wrong, and was mentally capable of controlling his conduct," and the evidence presented by the Government met this burden beyond a reasonable doubt. *Wion v. United States,* 325 F.2d 420, 430 (10th Cir.1963) (en banc), *cert. denied,* 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964). The court's ruling in denying Hack's motion for judgment of acquittal at the close of the Government's case-in-chief was properly supported by the record.

■ Hack also asserts that the concurrent prison sentences of 50 years on the attempted air piracy conviction and 5 years on the conspiracy offense were cruel and excessive, and that if a sentence is so disproportionate to the offense as to shock the moral sense of the community, the punishment is impermissible under the Constitution, citing the Eighth Amendment opinion in *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1909).

In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Court held that "as a matter of principle ... a criminal sentence must be proportionate to the crime for which the defendant has been convicted." 463 U.S. at 290, 103 S.Ct. at 3010, 77 L.Ed.2d at 649. The court concluded that "(t)he Constitution requires us to examine Helm's sentence to determine if it is proportionate to his crime." *Id.* at 303,

103 S.Ct. at 3016. The Court emphasized that reviewing courts should give substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishment as well as to the discretion that trial courts possess in sentencing convicted defendants.

The Court concluded that a proportionality analysis under the Eighth Amendment should be guided by objective criteria, including the gravity of the offense and harshness of the penalty, the sentences imposed on other offenses in the same jurisdiction, and the sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 292, 103 S.Ct. at 3011. In light of the seriousness of the Eighth Amendment claim in *Helm*, the Court made an extended analysis. However, it pointed out that the Court did not adopt or imply approval of a general rule of appellate review of sentences. Moreover, it stated that "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Id.* at 290 n. 16, 103 S.Ct. at 3009 n. 16.

In the instant case, we are convinced that such an extended analysis is not required. We are dealing with an offense of attempted air piracy which involved a serious threat to the lives of others and to property of others. Examined under the first criteria of the three-part proportionality analysis in *Helm*, we believe that the violent circumstances and the gravity of the offenses of this particular incident clearly do not support Hack's Eighth Amendment challenge to the appropriateness of the penalties he has received.

The second consideration identified in *Helm* requires the Court to view the specific sentence imposed on the defendant in the context of a jurisdiction's overall criminal sentencing scheme. Section 1472 states that those convicted of air piracy or attempted air piracy shall receive a sentence of not less than 20 years. 49 U.S.C. Sec. 1472(i)(1)(A), *see* footnote 2, *supra*. A perusal of sentences for other crimes suggests that the sentence for air piracy is not disproportionate. For example, assault an arguably "lesser" crime, contains a ten year maximum sentence in 18 U.S.C. Sec. 111. Likewise, first degree murder, an arguably "greater" crime, carries with it a sentence from life to the death penalty. 18 U.S.C. Sec. 1111. Second degree murder carries with it a sentence from any term of years to life imprisonment. *Id.* Kidnapping, perhaps the most closely analogous crime to air piracy under these facts, carries a sentence for any term of years up to life imprisonment as well. 18 U.S.C. Sec. 1201.

With respect to the third factor—sentences imposed for commission of the same crime in other jurisdictions—we note no Tenth Circuit state with an air piracy statute. However, there are kidnapping statutes in each of those six states, which appear to concern the crime most analogous to air piracy in this context. Examination of the kidnapping statute in these states of the circuit demonstrates that the punishment in Sec. 1472 is not constitutionally disproportionate.[5]

In sum, we conclude that under the circumstances here, the claim of an Eighth Amendment violation is untenable.

---

**5.** Under the facts of this case, the defendant might have been convicted of at least a Class 2 felony in Colorado, Colo.Rev.Stat. Sec. 18–3–301, *et seq.* The punishment for a Class 2 felony is from 10 to 15 years. The acts here may have constituted a Class A felony in Kansas with a resulting life imprisonment sentence. If it were found to be a Class B felony, the sentence would have run from five to 15 years as a minimum and from 20 years to life as the maximum sentence in Kansas, Kan.Stat.Ann. Sec. 21–3420. In New Mexico, the defendant could have received from 12 years to 24 years with the basic sentence being 18 years. N.M.Stat.Ann. Secs. 30–4–1, 31–18–15(A)(1), and 31–18–15.1(c). In Oklahoma the defendant could have received up to 10 years' imprisonment. 21 Okla.Stat.Ann. Sec. 741 *et seq.* In Utah, the defendant could have received a sentence of from 5 years to life imprisonment. Utah Code Ann. Sec. 76–5–302 & 76–3–203(1). Finally, in Wyoming, the state over which the criminal act occurred in this case, the defendant could have received a sentence from 20 years to life imprisonment, the same sentence prescribed by 49 U.S.C. Sec. 1472.

■ Hack also argues that the Court abused its discretion in imposing "the maximum allowable terms of confinement for the crimes charged." It appears that Hack's complaint is directed to the sentence imposed upon his conspiracy conviction. It is the present established rule that on review of sentences "once it is determined a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Dorszyñski v. United States*, 418 U.S. 424, 431, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855, 862 (1974). An appellate court is without the proper authority to modify or change a sentence merely upon a claim that it is too severe, *see Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam), unless the sentence exceeds the statutory maximum or the sentencing judge relied on incorrect information or has failed to exercise any discretion in imposing an appropriate penalty. *Yates v. United States*, 356 U.S. 363, 366–67, 78 S.Ct. 766, 768–69, 2 L.Ed.2d 837, 840 (1958) (per curiam); *United States v. Prazak*, 623 F.2d 152, 155 (10th Cir.), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980); *United States v. Thompson*, 680 F.2d 1145, 1149 (7th Cir.), *cert. denied*, 459 U.S. 1089, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982). Section 371, 18 U.S.C. authorizes, and Hack does not contend otherwise, for a fine of up to $10,000 or imprisonment up to five years, or both, upon a conviction of conspiracy to commit an offense against the United States. The record shows that the Court required the pre-sentence report on Hack be prepared for considering and setting of sentences. The fact that the Court ordered that the sentences for the convictions on attempted air piracy and conspiracy to run concurrently indicates that the Court exercised its sentencing discretion. Clearly, the sentence imposed for the conspiracy conviction was within the statutory limits and not in violation of any Constitutional provision. *See Rummel v. Texas*, 445 U.S. 263, 100 S.Ct. 1133, 62 L.Ed.2d 382 (1980). The Court did not abuse its discretion in sentencing Hack to the concurrent prison sentences of 50 years on the attempted air piracy conviction and 5 years on the conspiracy offense.

The last assignment of error concerns the Court's ruling on Owens' motion for severance. Prior to trial, Owens moved for a separate trial from that of co-defendant Hack. The motion was predicated upon the contention that he would be prejudiced in his defense because the nature of the charges against Hack was more serious and thus the evidence against Hack would be "far more incriminating and inflamatory" than that against him. The Court denied his motion. Owens now asserts that the district court's refusal to grant him a severance upon the appearance of such prejudice denied him a fair trial and was an abuse of discretion.

■ We find no merit in this argument. In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials. *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980). Since the decision to grant a severance is vested in the sound discretion of the district court, its decision will not be overturned on appeal unless there is an affirmative showing of abuse of discretion. *Id.* To establish that a court abused its discretion, a defendant must show actual prejudice to him resulting from a denial of his request for severance. *United States v. Long*, 705 F.2d 1259, 1262 (10th Cir.1983). Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, *United States v. Calabrese*, 645 F.2d 1379, 1385 (10th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981), nor a complaint of the "spillover effect" from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance. *See United States v. Pack*, 773 F.2d 261, 267 (10th Cir.1985); *United States v. Jackson*, 549 F.2d 517, 525 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct.

1682, 52 L.Ed.2d 379 (1977). Indeed, absent a showing of clear prejudice, a joint trial of the defendants who are charged with a single conspiracy in the same indictment is favored where proof of the charge is predicated upon the same evidence and alleged acts. *United States v. Beathune,* 527 F.2d 696, 698–99 (10th Cir.1975), *cert. denied,* 425 U.S. 996, 96 S.Ct. 2211, 48 L.Ed.2d 821 (1976).

■■■■■ In the present case, the indictment alleged that Owens and Hack engaged in the same illegal acts which formed the basis of the conspiracy offense by attempting to seize control of the aircraft by force and violence. The general rule in conspiracy cases is that where proof of the charges against defendants is dependent upon the same acts and evidence, persons who are indicted together should also be tried together. Because Hack was also charged with the substantive crime of attempted air piracy, there was, as Owens argues, naturally more evidence against Hack than against Owens. However, a mere disparity in the evidence from a quantitative standpoint against each defendant in a conspiracy case, without more, provides no justification for severance. *United States v. Jackson, supra.* In addition, the record demonstrates that the district judge used extreme care to insure that each defendant received a separate and impartial consideration of his case. Throughout the trial, the court repeatedly admonished the jury to consider the evidence only against the defendant to whom it related. At the end of the trial, the court again instructed the jury that

> "a separate crime of defense is charged against each of the defendants in each count of the indictment. Each offense and the evidence pertaining to it should be considered separately. The fact that you may find all or some of the accused guilty of one of the offenses charged should not control your verdict as to any other offense charged against any of the defendants."

Based on the facts disclosed by the record, we are convinced that there is no basis to support a finding that the jurors could not reasonably compartmentalize the evidence as to each of the defendants and properly apply it to the court's instructions in this one-day jury trial. Our examination of the record presented in this appeal supports our conclusion that no prejudicial error was committed. We hold the district court did not abuse its discretion in denying Owen's request for a severance and he was not deprived of a fair trial.

We affirm the judgments of conviction in all respects.