**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas Alfred FLANAGAN,
Defendant–Appellant.**

**Nos. 93–6004, 94–6018.**

United States Court of Appeals,
Tenth Circuit.

Aug. 31, 1994.

Order Amending Opinion on Grant
of Rehearing Nov. 21, 1994.

Jack Dempsey Pointer, Oklahoma City, OK, for defendant-appellant in No. 93–6004.

Thomas Alfred Flanagan, pro se, on the brief in No. 94–6018.

Ross Nick Lillard, III, Asst. U.S. Atty. (Vicki Miles–LaGrange, U.S. Atty., with him on the briefs), W.D. Oklahoma, Oklahoma City, OK, for plaintiff-appellee in Nos. 93–6004 and 94–6018.

Before KELLY and McKAY, Circuit Judges, and BRIMMER,* District Judge.

McKAY, Circuit Judge.

Thomas Alfred Flanagan appeals from his conviction on a multi-count indictment for conspiracy, mail fraud, wire fraud, and money laundering. Mr. Flanagan was convicted of one count of conspiracy in violation of 18 U.S.C. § 371, eight counts of mail fraud in violation of 18 U.S.C. § 1341, six counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of money laundering in violation of 18 U.S.C. § 1957(a). The district

---

* Honorable Clarence A. Brimmer, Jr., United States District Judge for the District of Wyoming, sitting by designation.

court calculated Mr. Flanagan's total offense level under the Sentencing Guidelines at thirty, with a criminal history category of II, mandating a term of imprisonment of between 108 and 135 months. The district court sentenced Mr. Flanagan to a term of 60 months imprisonment on the first three convictions and 115 months imprisonment on the money laundering conviction, the terms to run concurrently. The court also imposed a three-year term of supervised release. On appeal, Mr. Flanagan raises four instances of alleged error.

Also before us is case number 94–6018, Mr. Flanagan's pro se appeal of the district court's denial of his motion for bail pending appeal. In light of our disposition of his appeal on the merits in case number 93–6004, we affirm the district court's denial of his motion for bail.

## I. Facts

Mr. Flanagan's convictions stem from his involvement in a scheme to defraud investors in a sham medical supply company. The scam originated in the fall of 1991 when an individual known as Richard Condia (apparently an alias) arrived in Oklahoma City to start a purported business known as Fidelity National Medical Supply, which would sell medical supply distributorships to investors. The scheme was quite elaborate, involving the renting of office space, hiring employees, renting a guarded warehouse surrounded by a chain link fence and stacked with empty boxes bearing the Fidelity name, and creating fictitious references complete with offices and telephones. In order to reassure potential investors, provisions were also made to provide a "company" limousine to pick up investors at the airport and drive them to the warehouse, where they could see for themselves the extent of the resources commanded by Fidelity. The scam ultimately netted approximately $1.4 million in investors' funds.

Defendant–Appellant Thomas Flanagan and codefendant Harold Frederick Krueger were hired by Richard Condia at the outset of the scheme. Both Mr. Flanagan and Mr. Krueger participated in the initial hiring of employees, including salesmen. Approximately one month after the commencement

of the scam, however, both men were purportedly fired by Mr. Condia for alcohol problems. At this point, the facts as presented by Mr. Flanagan and by the United States diverge. Mr. Flanagan contends that he was ignorant of the fraudulent nature of Fidelity, and that he had no further involvement with Fidelity after his purported firing. The government, in contrast, contends that Mr. Flanagan was in on the scam from the beginning, and that after his purported firing, Mr. Flanagan continued to play an active role in the management of Fidelity's operations under the pseudonym of Barry Kent. Barry Kent was considered by the employees of Fidelity to be Mr. Condia's close personal assistant and exercised a great deal of control over the Fidelity operation. Except for one instance, Barry Kent communicated with the Fidelity employees only by telephone. The government presented evidence that in the one instance where Barry Kent apparently visited Fidelity's offices in person, the visitor was really an imposter paid to play the role of Barry Kent in order to lead the Fidelity employees to believe that Mr. Kent was a real person.

The jury convicted Mr. Flanagan on all sixteen counts of the indictment. On appeal, Mr. Flanagan argues that the district court erred in four respects. First, Mr. Flanagan argues that the district court improperly denied his motion for severance from codefendant Harold Krueger. Second, Mr. Flanagan argues that the district court erred in denying his motion in limine to exclude evidence of transactions involving Mr. Flanagan's sale of gold Kruggerand coins. Third, Mr. Flanagan argues that the district court erred in ordering him to provide a voice exemplar and compounded that error by allowing the government to present testimony regarding his refusal to do so. Finally, Mr. Flanagan argues that the district court erroneously allowed the government to inquire into Mr. Flanagan's prior involvement in a similar medical supply scam in 1980. We address each of Mr. Flanagan's contentions in turn.

## II. Denial of Motion to Sever

Prior to trial, Mr. Flanagan moved to sever his trial from that of codefendant Harold Krueger, pursuant to Fed.R.Crim.P. 14. We review the district court's denial of a

motion to sever for an abuse of discretion. *United States v. Evans*, 970 F.2d 663, 675 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993). Under Fed.R.Crim.P. 14, the court may order severance "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants." Fed.R.Crim.P. 14. Such prejudice is shown where the defendant demonstrates that his theory of defense is mutually antagonistic to that of a codefendant, in that " 'the acceptance of one party's defense would tend to preclude the acquittal of [the] other', or that '[c]onversely, such a showing would seemingly require that the guilt of one defendant tends to establish the innocence of the other.' " *United States v. Smith*, 788 F.2d 663, 668 (10th Cir.1986) (quoting *United States v. McClure*, 734 F.2d 484, 488 n. 1 (10th Cir.1984)).

■ In his motion to sever, Mr. Flanagan alleged that he had continually used his true identity throughout his involvement with Fidelity, a fact inconsistent with an intent to defraud. By contrast, codefendant Krueger had consistently used an alias in his dealings with Fidelity employees. Therefore, Mr. Flanagan argued, his defense was fundamentally at odds with the possibility of Mr. Krueger's innocence. The district court rejected the motion to sever, holding that the two defenses were not mutually antagonistic. We agree. A jury could logically accept Mr. Flanagan's defense without concluding that Mr. Krueger was guilty, and vice versa.[1] Nor has Mr. Flanagan demonstrated clear prejudice from the joint trial in the absence of mutually antagonistic defenses. "[A]bsent a showing of clear prejudice, a joint trial of the defendants who are charged with a single conspiracy in the same indictment is favored where proof of the charge is predicated upon the same evidence and alleged acts." *United States v. Hack*, 782 F.2d 862, 871 (10th Cir.),

*cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986). We accordingly affirm the district court's denial of Mr. Flanagan's motion to sever.

## III. Motion in Limine

■ Some of the money collected from Fidelity investors was used by Mr. Condia to purchase gold coins (Krugerrands and others) from Dillon Gage Precious Metals in Dallas, Texas. Between February 12, 1992, and March 20, 1992, Mr. Flanagan sold twenty-six gold Krugerrands to Thomas Cook Currency Services, Inc., in Atlanta, Georgia. Mr. Flanagan moved to exclude the evidence of his sale of the Krugerrands, arguing that it was irrelevant and unfairly prejudicial because the government could not prove that the Krugerrands he had sold were the same ones that Mr. Condia had purchased. The district court denied the motion to suppress, noting that Mr. Condia's purchase of the coins and Mr. Flanagan's sale of the coins were closely related in time; both transactions involved Krugerrands, "a coin not widely seen in the United States"; and Mr. Flanagan admitted that he had been employed by Fidelity. (R. Vol. I Doc. 69 at 9.) The court held that the lack of evidence that the coins were the same went to the weight of the evidence rather than to its admissibility.[2]

■ We review the district court's denial of a motion in limine for an abuse of discretion. *United States v. Alexander*, 849 F.2d 1293, 1301 (10th Cir.1988). We review both the district court's determination of the relevancy of the evidence and its conclusion that the probative value of the evidence is not substantially outweighed by its prejudicial effect for an abuse of discretion. *United States v. Harrison*, 942 F.2d 751, 759 (10th Cir.1991). Federal Rule of Evidence 401 defines relevant evidence as "evidence having

1. Moreover, we note that any prejudice that might be engendered by the presentation of the two defenses in the same trial would be suffered not by Mr. Flanagan, but by Mr. Krueger. Accordingly, any motion to sever on this ground properly should have been raised by Mr. Krueger.

2. The government argues that Mr. Flanagan has waived this issue because it was a defense witness, Ms. Mona Lisa Ghilffillan, testifying out of order before the close of the government's case,

who first testified that Mr. Flanagan had sold gold coins in Atlanta. While this is true, two government witnesses provided testimony relating to the gold coins prior to Ms. Ghilffillan's testimony. Darcy Jones testified that she had wired large amounts of Fidelity funds to Dillon–Gage Precious Metals in Dallas, and Terry Hanlon, Dillon–Gage's Director of Precious Metals and Foreign Exchange, testified that the money was used to buy various gold coins. Mr. Hanlon also testified that the coins sold to Mr. Condia in Dallas were similar to those appearing on invoic-

any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Mr. Flanagan's continuing involvement in the Fidelity scheme in early 1992 was a fact of consequence in this case, and there is no question but that the evidence of Mr. Flanagan's sale of gold Krugerrands in early 1992 was relevant to the question of his continuing association with the Fidelity scam.

 We next turn to the balancing test of Rule 403. The government maintains that the fact that Mr. Flanagan sold coins similar to those purchased by Fidelity within a short period of time is highly probative of Mr. Flanagan's continuing involvement in the conspiracy. We are not convinced that the evidence of Mr. Flanagan's sale of Krugerrands is highly probative, in light of the number of Krugerrands in circulation and their common use as an investment vehicle. Nevertheless, we agree that the evidence has some probative value. Turning to the prejudice aspect of the test, we cannot agree with Mr. Flanagan that the evidence of his sale of gold Krugerrands was unfairly prejudicial so as to preclude its admission under Rule 403. Mr. Flanagan's objection is in essence based on the fact that the evidence did in fact tend to connect him to the Fidelity conspiracy after he had allegedly been fired. Mr. Flanagan seems to argue that since the government had no other direct evidence of his continuing involvement in the scam, the evidence that the government did have should have been excluded. We are not persuaded. The government is not required to provide cumulative evidence on each point. While the evidence here certainly was damaging to Mr. Flanagan's defense, the unfair prejudice aspect of Rule 403 "cannot be equated with testimony which is simply unfavorable to a party. It must be unfair in the sense that it would be misleading and not aid and assist the jury in making a material determination in the case." *McEwen v. City of Norman,* 926 F.2d 1539, 1549 (10th Cir.1991). Accordingly, we hold that the district court did not abuse its discretion in admitting the evidence of Mr. Flanagan's sale of gold Krugerrand coins in Atlanta.

## IV. Voice Exemplar

In its effort to show that Mr. Flanagan had assumed the identity of Barry Kent after his purported firing, the government moved the district court to order Mr. Flanagan to provide a voice exemplar, wherein Mr. Flanagan would recite certain phrases allegedly spoken by Barry Kent over the telephone. The recording would then be played back, along with recordings of other persons, for Mike Shofner, one of the government witnesses who had frequently communicated with Barry Kent via telephone. Over Mr. Flanagan's objection, the district court ordered the voice exemplars to be taken. Mr. Flanagan refused to comply, and the district court allowed the government to comment on that refusal. Mr. Flanagan contends that the district court erred in ordering him to provide a voice exemplar and further erred in permitting testimony that he had refused to do so.

 It is well-settled that requiring a defendant to provide a voice exemplar for purposes of identification rather than for the testimonial content of the exemplar does not violate the Fifth Amendment's privilege against self-incrimination. *United States v. Delaplane,* 778 F.2d 570, 575 (10th Cir.1985) (citing *United States v. Dionisio,* 410 U.S. 1, 7, 93 S.Ct. 764, 768, 35 L.Ed.2d 67 (1973)),

es from Thomas Cook Currency Services in Atlanta showing the sale of gold coins. Mr. Flanagan's counsel objected to the testimony of both Ms. Jones and Mr. Hanlon on the grounds of relevancy and unfair prejudice, the same grounds stated in his Motion in Limine. (R.Vol. V at 382 and 391.) While the testimony at this point had not yet explicitly tied Mr. Flanagan to the sale of the coins in Atlanta, the testimony about the sales to Thomas Cook in Atlanta could only have related to Mr. Flanagan. This was a proper point for Mr. Flanagan's counsel to renew his objection in order to preserve the issue of the district court's denial of his Motion in Limine.

By objecting to the testimony, Mr. Flanagan's counsel preserved the issue for appeal, and the fact that it was a defense witness testifying out of order who actually made the first explicit link to Mr. Flanagan is not relevant. Once the testimony about the sale of gold coins in Atlanta was admitted over his objection, Mr. Flanagan's counsel was entitled to elicit testimony from defense witnesses testifying out of order relating to that transaction in order not to lose that testimony from a witness who could not be called later, and in order to take some of the sting out of the testimony. Accordingly, we hold that the issue is properly before us.

*cert. denied,* 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986); *United States v. Wade,* 388 U.S. 218, 221–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967). The privilege against self-incrimination "attaches only to testimonial compulsion and does not attach to demonstrative, physical, or real evidence." *Delaplane,* 778 F.2d at 575. Accordingly, the district court did not err in ordering Mr. Flanagan to provide a voice exemplar. Nor did the district court err in allowing testimony regarding Mr. Flanagan's refusal to do so. *See United States v. Askew,* 584 F.2d 960, 963 (10th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979).

### V. Testimony Regarding 1980 Scam

Prior to trial and in accordance with Fed.R.Evid. 404(b), the government submitted written notice of its intent to introduce evidence of Mr. Flanagan's involvement in 1980 in a scam similar to the Fidelity conspiracy. (R.Vol. I Doc. 26.) Mr. Flanagan filed a Motion in Limine seeking to exclude such evidence. The district court denied Mr. Flanagan's Motion in Limine except to the extent that the evidence might be in the form of hearsay. (R.Vol. I Doc. 69 at 3–7.) In so ruling, the court made clear that the evidence was admissible solely for the purposes of showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," rather than for the purpose of proving action in conformity therewith. *Id.* at 4 (quoting R. 404(b)).

At trial, government witness Kenneth Childress testified on cross-examination as follows:

Q [by Mr. Flanagan's counsel]: Now, I want to ask you a question I alluded to in the past. Would you say that Tom Flanagan is a salesman's salesman?

A: Yes, sir.

Q: Now why?

A: He has been very successful over the years in selling.

Q: Made a lot of money at it?

A: Yes, sir.

Q: Feast and famine, is that the kind of deal it is?

A: Always in sales, yes, sir.

Q: Travels all over the country?

A: Yes, sir.

(R.Vol. VI at 580–81.) After this testimony, the government asked to approach the bench, at which point the government argued that through his question about Mr. Flanagan being a "salesman's salesman," Mr. Flanagan's counsel had put Mr. Flanagan's character at issue and had thus opened the door to impeachment on that issue by introduction of testimony regarding Mr. Flanagan's involvement in the 1980 scam. Mr. Flanagan's counsel vehemently objected, arguing that the question only referred to the fact that Mr. Flanagan had been in sales for much of his life, and was a good salesman. (R.Vol. VI at 581–84.) The judge concluded that "[f]or the fact of his being a salesman have [sic] any relevance whatsoever, it implies to the jury that he is an honest man and I believe that the door has been opened and I will allow the 404(b) evidence." (R.Vol. VI at 582.) After a recess during which the judge further researched the issue, this ruling was reaffirmed. *Id.* at 588–89. The subsequent testimony was as follows:

Q [by the prosecution]: Have you heard that defendant—or do you know that defendant Flanagan was involved with defendant Krueger in the Southern Medical Supply medical supply distributorship scam which occurred in Mobile, Alabama, in 1980?

A: No, sir, I don't recall any Southern Medical. That's the first I ever heard of that was when the FBI asked me about it.

Q: Do you know or have you heard that as a result of his involvement with Krueger in the Southern Medical Supply scam in Mobile, Alabama in 1980 that defendant Thomas Alfred Flanagan was convicted on 12 felony counts in the United States District Court for the Southern District of Mississippi on the offenses of mail and wire fraud and conspiracy? Did you know that or have you heard that?

MR. POINTER [Defendant's counsel]: To which I would object, Your Honor, as hearsay.

THE COURT: Overruled. You may answer.

A: I was under the impression Mr. Flanagan had went to jail at one time years ago for mail fraud, yes, sir.

(R.Vol. VI at 592–93.)

Mr. Flanagan argues on appeal that the "salesman's salesman" testimony did not open the door to examination on his character, and that the district court accordingly erred in allowing the government to introduce the evidence of Mr. Flanagan's involvement in the 1980 scam. We agree that, taken in context, the "salesman's salesman" testimony did not constitute a reference to Mr. Flanagan's good character so as to put his character in issue. The statement has no connotations with respect to Mr. Flanagan's truthfulness. Rather, as reflected in the witness's explanation of his answer, the term "salesman's salesman" referred only to Mr. Flanagan's success in his occupation. *Id.* at 581; *see also id.* at 592–93. While the court may have been correct that Mr. Flanagan's success as a salesman was not relevant, there was no objection based on relevancy, and the possible irrelevance of the testimony does not transform the nature of the testimony into character evidence. Accordingly, we hold that the district court erred in permitting the government to introduce evidence of Mr. Flanagan's involvement in the 1980 scam to impeach Mr. Flanagan's character.

 Having concluded that the district court erred in admitting the testimony about Mr. Flanagan's involvement in the 1980 scam, we now turn to the question whether that error was harmless. In conducting a harmless error review, we review the record *de novo*. *United States v. Perdue*, 8 F.3d 1455, 1469 (10th Cir.1992). Where an error is harmless, reversal is not mandated. As the error in admitting the evidence of Mr. Flanagan's involvement in the 1980 scam was not of constitutional dimensions, the error is deemed harmless "unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). In making this determination, the government has the burden of proving that the non-constitutional error was harmless. *Id.* at 1469 n. 4.

Mr. Flanagan's prior involvement in a medical supply company scam similar to the Fidelity scam was referenced several times during the trial. For example, during the direct examination of codefendant Krueger, Mr. Krueger testified that he had cooperated with the FBI in its investigation of Mr. Flanagan's activities in the Southern Medical Supply scam. (R.Vol. VIII at 1157.) Similarly, Mr. Krueger testified during the government's cross-examination that Mr. Flanagan was one of his "partners" in the Southern Medical scam. *Id.* at 1182–83. In response to an objection by Mr. Flanagan's counsel to the testimony by Mr. Krueger, the district court ruled that the testimony by Mr. Krueger was more probative than prejudicial (a conclusion not contested on appeal) and would be admitted, subject to a limiting instruction that the evidence could not be used as evidence of Mr. Flanagan's guilt in the Fidelity scam but only to prove lack of mistake, plan, preparation, or motive, in accordance with Fed.R.Evid. 404(b). That instruction was given to the jury twice during the government's cross-examination of Mr. Krueger. *Id.* at 1183 and 1194. Thus, the only evidence that was erroneously admitted as a result of the Childress testimony was that Mr. Flanagan was actually convicted for his involvement in the 1980 scam; the evidence of his extensive involvement in the scam was properly admitted at other times during the trial.

 Notwithstanding the fact that "[e]xcept possibly for minor, technical errors for which there is no reasonable possibility that the verdict could have been affected, the government ordinarily has the burden of proving that a non-constitutional error was harmless," *Rivera*, 900 F.2d at 1469 n. 4, we note that the government has presented no arguments in its brief as to why the admission of the testimony—assuming we were to conclude it was erroneous, as we have—would be harmless. Nevertheless, we must perform our harmless error analysis by judging the evidence in the context of all of the evidence presented at trial. In light of our review of the record demonstrating that the evidence of Mr. Flanagan's involvement in the 1980 scam was properly admitted elsewhere in the record, we do not believe that Mr. Childress's testimony had a "substantial influence" on the outcome; nor are we left in "grave doubt" as to whether it had such an effect. We therefore conclude that the erro-

neous admission of Mr. Childress's testimony was harmless error.[3]

AFFIRMED.

Before KELLY and McKAY, Circuit Judges, and BRIMMER, District Judge.

## ORDER ON REHEARING

Nov. 21, 1994

PER CURIAM.

On petition for rehearing, Appellant raised for the first time on appeal the issue of "improper grouping of counts under wire fraud and money laundering offenses and application of U.S.S.G. 3D1.2(d)." The issue was raised in the district court but not on appeal. In a case arising out of the same transaction, *United States v. Krueger*, 36 F.3d 1106, 1994 WL 470195 (10th Cir., Aug. 31, 1994) (No. 93–6009) (unpublished disposition), this court remanded for resentencing, citing *United States v. Johnson*, 971 F.2d 562 (10th Cir.1992). The issue before us in this case is identical to the issue in *Krueger, supra*. Petitioner asks us to review the issue under plain error analysis. In its response to the petition for rehearing in this case, the government concedes that this court's ruling in *United States v. Johnson, supra*, is controlling and resulted in an improper grouping of wire and mail fraud and money laundering under U.S.S.G. § 3D1.2(d).

This court hereby grants the petition for rehearing and amends its opinion heretofore filed for the purpose of remanding to the district court for the limited purpose of resentencing in accordance with *Krueger* and *Johnson.* The court's opinion and order is otherwise affirmed in its entirety.

---

3. There may appear to be some inconsistency between our holding that there was no error in denying the motion to sever the trials of Mr. Flanagan and Mr. Krueger and our holding that the testimony of Mr. Krueger rendered the erroneous admission of the testimony about Mr. Flanagan's prior convictions harmless error. Obviously, if the motion to sever had been granted, Mr. Krueger's testimony would not have been available and we might well have concluded that the error in admitting Mr. Childress's testimony was not harmless error. We note, however, that the only ground raised in support of the motion to sever was the alleged inconsistency between Mr. Flanagan's use of his true name and Mr. Krueger's use of an alias. The possibility that Mr. Krueger might implicate Mr. Flanagan in the earlier scam and thus provide an opening to testimony about Mr. Flanagan's involvement in the 1980 scam was not discussed.