F I L E D
United States Court of Appeals
Tenth Circuit

APR 8 1997

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

THOMAS DEAN MARCKS,

    Defendant-Appellant.

No. 96-8052
(D.C. No. 95-CR-91-B)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **LUCERO**, and **MURPHY**, Circuit Judges.

    Defendant Thomas Marcks appeals his conviction for conspiracy to manufacture a controlled substance, in violation of 21 U.S.C. § 846; attempted manufacture of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and possession of a listed substance with intent to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d). Mr. Marcks contends the district court erred in denying his motion for a mistrial after the admission of evidence of prior crimes and his motion to suppress evidence seized with an overly broad search warrant. We affirm.

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Marcks and codefendant Charles Northcott conspired to manufacture methcathinone using a makeshift laboratory set up in Mr. Northcott's girlfriend's apartment in Jackson, Wyoming. Shortly after the defendants' arrival in Jackson, however, Sergeant Alan John of the Jackson Police Department received a tip that an individual named Tom Marcks was in the Jackson area with someone named "Chuck," staying at an apartment in the Cottonwood Park neighborhood that belonged to Chuck and his girlfriend, Jo Anne Barbour. The informant reported that Mr. Marcks was driving a silver, two-door automobile with stolen Wyoming license plates, that Mr. Marcks was wanted by law enforcement authorities, and that Mr. Marcks and Chuck intended to manufacture methamphetamine.

Sergeant John and Sergeant Scott Hughes then attempted to corroborate the tip. They discovered that a Jo Anne Barbour did live in the Cottonwood Park neighborhood at 2000 Corner Creek, and observed a silver, two-door Toyota at the residence. A vehicle check revealed the license plates belonged to a BMW and the car was registered to Thomas Marcks. Further investigation uncovered an outstanding warrant for Mr. Marcks issued in Utah for a parole violation.

Armed with this information, Sergeant John prepared an affidavit and obtained a warrant to search Ms. Barbour's apartment for the person of Thomas Marcks. During the course of Mr. Marcks' arrest, officers noticed chemicals and equipment associated with

the manufacture of drugs in the apartment.  Concerned with the potential danger presented by the chemicals, Sergeant Hughes contacted a chemist from the state crime laboratory and described his observations.  The chemist confirmed Sergeant Hughes' suspicion that officers had discovered a clandestine lab and advised that the residence be secured and ventilated until the lab could be dismantled.  Sergeant Hughes prepared another affidavit, and a second warrant was issued authorizing seizure of the drug paraphernalia.

At trial, Mr. Northcott testified for the government pursuant to a plea agreement. The following exchange occurred during his testimony:

Q.  Before we get into that, you ever use drugs with the defendant?

[DEFENSE COUNSEL]: I object as Rule 404, Your Honor, and ask the jury to disregard the question.

THE COURT: Does it come under any of the exceptions under Rule 404? Is this what you're doing?

[GOVERNMENT]: Your Honor, I think, if anything, it's inextricably intertwined with this whole course of events, Your Honor, goes to the nature of the relationship that was between this defendant and -- or this witness and the defendant.  I suppose I could -- you could -- I could argue that it goes to intent.  It goes to knowledge.

THE COURT: Well, I'll admit it under 404(b) as to evidence of other crimes and wrongs that may be admissible for the purposes of proof of motive, opportunity, intent, preparation, plan, knowledge or indemnity [sic].

Next, despite a pretrial order in limine precluding testimony about Mr. Marcks'

prior Utah felony conviction, the government elicited the following testimony from

Sergeant Hughes:

> Q. Tell the jury, please, how it was that you first became involved in this case.
>
> A. During that week in September . . . Investigator John at the time -- advised me of the possibility of a gentleman by the name of Mr. Marcks being in the Teton County area --
>
> [DEFENSE COUNSEL]: Object to Rule 802 and confrontation, Your Honor.
>
> THE COURT: Overruled.
>
> [DEFENSE COUNSEL]: Also cumulative.
>
> THE COURT: Overruled.
>
> A. -- advised me that a gentleman by the name of Mr. Marcks would be in the Teton County area, which is covered by our enforcement team, and that he was a wanted felon, and that he was there for the purpose of establishing -- setting up --

Defense counsel requested a mistrial, arguing the officer's testimony had violated the

court's order in limine. The government maintained the order precluded testimony

concerning the underlying felony charge, not the fact of the conviction itself. The district

court agreed and denied defense counsel's motion.

## II.

Mr. Marcks contends the district court abused its discretion in admitting evidence

of his drug use and his prior felony conviction because the evidence constituted character

evidence prohibited under Fed. R. Evid. 404(b).  He further argues the introduction of

prior bad acts evidence was so prejudicial that the district court committed error in

denying his motion for a mistrial.  We review the district court's admission of prior

crimes evidence for an abuse of discretion.  ***United States v. Wacker***, 72 F.3d 1453, 1468

(10th Cir. 1995), *cert. denied*, 117 S.Ct. 136 (1996).

> Fed. R. Evid. 404(b) provides:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the
> character of a person in order to show action in conformity therewith.  It
> may, however, be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or absence of
> mistake or accident . . . .

A determination of the admissibility of Rule 404(b) evidence is guided by a four-part test

requiring that (1) the evidence was offered for a proper purpose, (2) the evidence was

relevant, (3) the probative value of the evidence was not substantially outweighed by its

potential for unfair prejudice, and (4) the district court, upon request, submitted a limiting

instruction.  ***Huddleston v. United States***, 485 U.S. 681, 691-92 (1988); ***United States v.***

***Hill***, 60 F.3d 672, 676 (10th Cir.), *cert. denied*, 116 S.Ct. 432 (1995).  We consider the

prior bad acts and prior conviction separately.

Our review under the purpose prong of the ***Huddleston*** test is complicated by the

failure of both the government and the district court to state with any precision the

purpose for admitting evidence of Mr. Marcks' prior drug use.  In response to Mr.

Marcks' objection at trial, the government offered three alternatives for admission and the

court admitted the evidence under an all-encompassing restatement of the rule.  We have rejected a sweeping application of the exceptions to Rule 404(b).  In *United States v. Biswell*, 700 F.2d 1310 (10th Cir. 1983), we instructed that

> [s]uch purpose should have been clearly identified and a broad statement invoking the Rule does not suffice.  The burden is on the Government which "must carry the burden of showing how the proffered evidence is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence."

*Id*. at 1317 (quoting *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982)).

Without a more reasoned explanation from the government or the court, we are at a loss to understand the application of any of Rule 404(b)'s exceptions to this evidence.  Even assuming Mr. Marcks' entire defense was a lack of knowledge of the substance to be manufactured, his use of marijuana and methamphetamine does not demonstrate he understood the chemical properties of and procedure for manufacturing methcathinone.  The government asserts that Mr. Marcks' drug use falls within the exceptions because it "is highly relevant . . . to prove the nature of the trusting relationship between the conspirators."  We are underwhelmed.  The argument still fails to identify an allowable purpose under 404(b).  Any relevance of that evidence does nothing to illuminate its purpose, and proof of the nature of codefendants' relationships does not qualify as an enumerated exception.  If the government means to suggest the evidence serves as proof of a plan, that argument is even less compelling.  Evidence of sharing a marijuana

cigarette is no more linked to a conspiracy to manufacture methcathinone than evidence of sharing a bottle of whiskey would be linked to a conspiracy to create an illegal still.

The government's "res gestae" theory fails for the same reason. Drug use is not, as the government maintains, "part and parcel" of a conspiracy to manufacture drugs.[1] The government's reliance on **United States v. Kimball**, 73 F.3d 269 (10th Cir. 1995), to support this proposition is misplaced. In **Kimball**, we allowed the introduction of testimony concerning defendant's recent incarceration and limited income source as evidence of defendant's involvement in an armed bank robbery. Offered as proof of motive and intent, the evidence was used to reconstruct the crime and prove its specific elements. **Id**. at 272.

That is not the case here. Mr. Marcks' drug use had no value as evidence proving he conspired to manufacture methcathinone. The evidence could only serve to incriminate Mr. Marcks' character, to portray him as a drug user who acted in conformity

---

[1] The government's claim that the evidence of drug use revealed the development of the manufacturing conspiracy is not borne out by Mr. Northcott's testimony. In response to the government's rather suggestive query, "[w]as it while you were using drugs with the defendant that you started to talk about this plan to get chemicals and so on," Mr. Northcott stated:

> Yeah. It was right -- I just got out of -- like I said, I got out of the rehab and I went out and -- I mean, I'd only been out like a day and I started using the drugs. I had the recipe and it looked like a pretty easy way for me to get back on my feet after being in jail for six months, make some money. And I -- yeah, basically we just started hustling.

At best, Mr. Northcott's answer is entirely ambiguous.

with his character by manufacturing drugs. This is precisely the type of evidence proscribed by Rule 404. *See **United States v. Wilson***, ___ F.3d ___, 1997 WL 71659, at *11 (10th Cir. Feb. 20, 1997); ***Biswell***, 700 F.2d at 1318. We believe the limited probative value of Mr. Marcks' prior drug use is substantially outweighed by the significant potential for prejudice from its introduction. *See **Huddleston***, 485 U.S. at 691 (trial court must determine under Fed. R. Evid. 403 whether the evidence's probative value is substantially outweighed by its potential for unfair prejudice). Furthermore, the court issued no limiting instruction explaining the discrete purpose for which the evidence was introduced. For these reasons, we conclude the district court abused its discretion in admitting this evidence.

Admission of Mr. Marcks' prior conviction is similarly flawed. The district court issued its order in limine precluding testimony about the conviction in response to the government's concession to defendant's motion. Consequently, the court made no independent findings assessing the relevance or prejudicial effect of the evidence. In admitting Sergeant Hughes' testimony, the court merely concluded the mention of Mr. Marcks' prior conviction did not violate the order. The government now contends introduction of Mr. Marcks' status as a felon was required to place the officers' actions in context. We are unpersuaded by this argument.

First, the evidence has no connection to any elements of the offenses with which Mr. Marcks was charged; his felony conviction, therefore, sheds no light on the question

of his guilt or innocence.  And because admission of a prior felony conviction carries even greater risk of prejudice than evidence of drug use, any potential probative value is substantially outweighed by prejudicial effect.  *See id*.

Second, to the extent the government felt it necessary to provide the jury with an extended exposition of police activity, it took that opportunity, with no objection from Mr. Marcks, through Sergeant John's testimony that Mr. Marcks was "wanted for some type of warrants."  We can discern no possible reason to further specify the nature of the warrant except to overzealously introduce damaging character evidence against Mr. Marcks.  *See Wacker*, 72 F.3d at 1472.  Accordingly, we conclude the admission of this evidence was, similarly, an abuse of the district court's discretion.

Our determination that the evidence of prior crimes was not justified under a Rule 403 or 404(b) balancing test does not end our inquiry, however.  Because the error in admitting the evidence does not implicate a constitutional right, the error is harmless "unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect."  *United States v. Flanagan*, 34 F.3d 949, 955 (10th Cir. 1994) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).  We review the record de novo to evaluate the effect of the evidence on the jury's verdict "in the context of the entire case against [defendant]."  *Wilson*, ___ F.3d at ___, 1997 WL 71659, at *11 (quoting *United States v. Short*, 947 F.2d 1445, 1455 (10th Cir. 1991)).

The record reveals the government introduced starkly overwhelming evidence of Mr. Marcks' guilt. Mr. Marcks was essentially caught red-handed -- laboratory equipment and chemicals were seized from his temporary residence while he was present and the manufacturing process was underway. At the time of his arrest, he made incriminating statements to the officers. Furthermore, Mr. Northcott testified extensively concerning their plan to manufacture drugs, and much of his testimony was corroborated by physical evidence. We believe the admission of Mr. Marcks' prior conviction and drug use did not substantially influence the jury's verdict. Accordingly, we hold the district court's error in admitting the evidence was harmless. *See Wilson*, ___ F.3d at ___, 1997 WL 71659, at \*12; *United States v. Sloan*, 65 F.3d 861, 865 (10th Cir. 1995) ("[w]here the evidence against a defendant is overwhelming, any error in mentioning a defendant's criminal record is harmless"), *cert. denied*, 116 S.Ct. 824 (1996).

III.

Mr. Marcks argues the first search warrant, authorizing seizure of his person, was "a general warrant issued without probable cause for the discovery and seizure of property," and the illegality of that warrant rendered the subsequent search warrant invalid. We disagree.

In determining whether a search warrant was properly issued, the extent of our inquiry is whether the issuing magistrate or judge had a substantial basis for finding probable cause. *United States v. Cusumano*, 83 F.3d 1247, 1250 (10th Cir. 1996) (en

banc).  In this instance, the initial warrant authorized officers to search the residence at 2000 Corner Creek for the limited purpose of apprehending Mr. Marcks.  Officers had received information from an informant that Mr. Marcks was staying at a particular residence, that he was a fugitive, and that he was involved in drug activity.  After verifying nearly every detail of the tip, Sergeant John prepared an affidavit setting forth his knowledge of the situation.  Based on the totality of the circumstances, *see* ***Illinois v. Gates***, 462 U.S. 213, 238 (1983); ***Cusumano***, 83 F.3d at 1250, the judge's probable cause determination was substantially supported by the evidence.

The warrant is not a general warrant.  The Fourth Amendment requires warrants to describe with particularity the things to be seized, so that "nothing is left to the discretion of the officer executing the warrant."  ***United States v. Robertson***, 21 F.3d 1030, 1033 (10th Cir. 1994), *cert. denied*, 116 S.Ct. 197 (1995).  Generally, a warrant is sufficiently specific when "it enables the searcher to reasonably ascertain and identify the things authorized to be seized."  ***United States v. Janus Industries***, 48 F.3d 1548, 1554 (10th Cir.), *cert. denied*, 116 S.Ct. 87 (1995).  It is difficult to imagine how the first warrant could have described with more particularity the object of the search.[2]  The warrant was

---

[2]  The warrant provided in relevant part:

> Affidavit having been made before me by Alan John, that he has reason to believe that on the premises described in Exhibit A . . . there is now being concealed a certain person, to wit: see Exhibit B attached hereto and made a part hereof:

(continued...)

- 11 -

sufficiently specific, alerting officers to the person to be seized and the scope of the search.

Mr. Marcks' challenge to the validity of the second warrant is premised upon the assumption the first warrant's infirmities precluded it from serving as a basis for a second warrant. That was not the case. The first warrant, supported by probable cause and sufficiently specific, legally authorized the officers to enter Mr. Marcks' temporary residence. While executing that warrant, officers observed in plain view items associated with the manufacture of illegal drugs. *See **Harden v. California***, 496 U.S. 128, 136-37 (1990); ***United States v. Lang***, 81 F.3d 955, 967 (10th Cir. 1996). The district court found these observations "gave the police more than adequate probable cause to apply for a second warrant authorizing them to search the apartment for materials related to the production and distribution of illicit drugs." We find no reason to disturb that conclusion.

## IV.

The judgment of the district court is **AFFIRMED**.

---

[2](...continued)
. . . .

YOU ARE HEREBY COMMANDED to search the place named for the person specified . . . and if the person be found there to seize him, and prepare a written inventory of the person and any property seized.

Exhibit B provided the additional information that "The Person to Be Seized" was Thomas Marcks.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge