**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 1, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DALLION LAVELL BANKS,

Defendant - Appellant.

No. 07-5010

N.D. Okla.

(D.C. No. 06-CR-61-K)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

Dallion Lavell Banks was evicted from his hotel room because of noise complaints. Following his eviction, the police searched his room and discovered drugs and guns. On the basis of this evidence, the police obtained a search warrant for Banks' apartment and discovered more drugs and guns, as well as other indicia of drug dealing. Banks challenges the denial of his motion to suppress the evidence discovered in his hotel room. He also challenges the

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court's decision to allow a police officer to opine that Banks was "most definitely" involved in drug dealing. (R. Vol. V at 73.) We affirm.

## I. BACKGROUND

On January 10, 2006, Banks rented a hotel room in Tulsa, Oklahoma. He originally rented the room for one night, but paid for an additional night on January 11. There were complaints about the noise coming from Banks' room on the night of the 10th, and again on the night of the 11th. At approximately 11:00 p.m. on January 11, Patricia Mauler, the hotel's front desk night auditor, arrived for work. The individual who had worked the previous shift informed Mauler she had received noise complaints about Banks' room. She told Mauler she had relayed the complaints to the hotel manager, who instructed her to telephone Banks and inform him he needed to vacate his room, but would be refunded the cost of the room. She informed Mauler she had called the room, but no one had answered.

At approximately 11:10 p.m., Mauler received a call from the occupant of Room 205, who complained he had been kept awake the previous night by noise coming from Room 203 (Banks' room) and was upset because it was happening again. After receiving this call, Mauler called Banks' room, but again no one answered. Mauler then called the Tulsa Police Department (TPD) on its non-emergency line and asked for assistance in evicting Banks from his room.

TPD Officers King and Driskill arrived at the hotel at approximately 11:45

p.m. Mauler told the officers she had received complaints about Room 203 and needed to evict Banks from the room. Mauler remained at her desk while the officers went to Room 203. Officer King knocked on the door and identified himself as a police officer. At the suppression hearing, he testified he could tell the room was occupied because he saw someone come to the peephole and he saw shadows under the door, but no one answered. King continued to knock and identify himself as a police officer.

TPD Officers Upton and Eddings arrived at the hotel to assist King and Driskill. After more knocking, Eddings went to the front desk to get a pass key from Mauler because no one had answered the door. Before Officer Eddings returned, Banks answered the door. Officer King testified Banks was "very agitated" when he answered the door. (R. Vol. III at 18.) Officers King and Driskill testified they were concerned for their safety because Banks was clenching his left hand and his right hand was out of view. King testified he explained to Banks why the police were there, but Banks would not listen. King asked Banks to step out of the room several times but Banks refused. Eventually, Banks started to step out of the room. The officers still could not see what was in Banks' hands. Out of concern for their safety, they grabbed Banks' arms and handcuffed him. Officer Driskill took Banks down to the hotel lobby.

Prior to being led downstairs, Banks clearly and unequivocally objected to his room being searched. Officer Driskill was asked at the suppression hearing:

"[Banks] was saying you don't have any business in my room, correct?" He replied: "He was saying words to that effect, yes." He was asked: "He didn't invite you to enter?" and responded: "No." (*Id.* at 31.) He testified: "He kept being argumentative. Telling us we had no right to be there, we had to leave. Get out of here. This is my room." (*Id.* at 28.) Nonetheless, Officers King, Upton and Eddings entered Banks' room after he was led downstairs. To ensure their safety, the officers handcuffed the five people remaining in Banks' room. The search of the room revealed multiple guns, methamphetamine and over $4,000 cash. Based on the search, the police obtained a warrant to search Banks' apartment and found more guns and methamphetamine as well as baggies, two sets of digital scales, and sheets of notebook paper with notations of people owing money.

Banks was indicted on two counts: possession with intent to distribute fifty grams or more of methamphetamine (Count I) and possession of three firearms in furtherance of a drug trafficking crime (Count II). A superseding indictment was filed, which added counts based on evidence discovered in Banks' apartment: possession with intent to distribute five grams or more of methamphetamine (Count III) and possession of three firearms in furtherance of a drug trafficking crime (Count IV).

Banks filed a motion to suppress the evidence that formed the basis of Counts I and II, arguing the police officers' entry into his hotel room violated his

Fourth Amendment right to be free from unreasonable searches and seizures. The district court held a suppression hearing and then requested supplemental briefing on the applicability of *United States v. Flowers*, 336 F.3d 1222 (10th Cir. 2003). After reviewing the supplemental briefs, the court denied Banks' motion to suppress. The court focused its analysis on "whether . . . the police illegally crossed the threshold when they reached in and seized Defendant for the purposes of cuffing and arresting him." (R. Vol. I, Doc. 49 at 5.) It held "the officers clearly had authority to arrest Defendant in the doorway of the hotel room" and concluded "even if the doorway arrest was improper, there were exigent circumstances justifying the entry into the dwelling." (*Id.* at 6-7.)

The case against Banks proceeded to trial. Over the course of the two-day trial, the jury heard testimony from seven police officers, a forensic scientist, and three of Banks' personal acquaintances, among others. Banks also testified in his own defense. The court allowed Officer Kelley to testify, over Banks' objection, that he "believe[d] that the defendant, Dallion Banks, was most definitely distributing illegal methamphetamine for the purpose of obtaining money." (R. Vol. V at 73.) The court admitted this statement as lay opinion testimony under Rule 701 of the Federal Rules of Evidence. Banks was convicted of all four counts and sentenced to 528 months imprisonment. He contends the district court erred by denying his motion to suppress and allowing Officer Kelley to opine that he was "most definitely" engaged in drug dealing. (*Id.*)

## II. DISCUSSION

### A. <u>Denial of Motion to Suppress</u>

Banks contends the search of his hotel room violated his rights under the Fourth Amendment. He did not raise this particular argument before the district court.[1] "The well-settled law of this circuit is that issues not raised in district court may not be raised for the first time on appeal." *United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir. 2004). However, we "may affirm the judgment of a district court on any grounds that find support in the record, provided the litigants have had a fair opportunity to develop the record." *Seibert v. Okla. ex rel. Univ. of Okla. Health Sci. Ctr.*, 867 F.2d 591, 597 (10th Cir. 1989), *abrogated by Am. Mfg. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999). While "[v]ery rarely will such a record be available on a motion to suppress when the issue . . . [was] not expressly argued at the suppression hearing," *United States v. Morgan*, 936 F.2d 1561, 1576 (10th Cir. 1991) (Seymour, J., dissenting), this is one of those rare cases. The parties have fully briefed the validity of the search and the facts have been sufficiently developed for us to consider Banks'

---

[1] In the district court, Banks argued the hotel did not have the authority to evict him and the police did not have the authority to assist in the eviction. He does not repeat those arguments here. Instead, he concedes the police "might arguably have attempted to exercise a valid community caretaking function when they initially seized [him]. (Appellant's Br. at 13 n.1.) While we have serious concerns about the manner in which the officers "assisted" with the eviction, Banks has waived this issue by not raising it in his opening brief. *See United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir. 2004) ("The failure to raise an issue in an opening brief waives that issue.").

argument.

When reviewing a district court's denial of a motion to suppress, we "consider[ ] the totality of the circumstances and view[ ] the evidence in the light most favorable to the government." *United States v. Andrus*, 483 F.3d 711, 716 (10th Cir. 2007). "We accept the district court's factual findings unless they are clearly erroneous." *Id.* "Issues of law, however, such as determinations of reasonableness under the Fourth Amendment . . . are reviewed *de novo*." *Id.*

The Supreme Court has afforded the greatest Fourth Amendment protection to the home. *See Payton v. New York*, 445 U.S. 573, 585 (1980) ("[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.") (quotations omitted); *United States v. Najar*, 451 F.3d 710, 712 (10th Cir.), *cert. denied*, 127 S. Ct. 542 (2006). The requirements of the Fourth Amendment apply with the same force to a motel room as to a more permanent residence. *See Hoffa v. United States*, 385 U.S. 293, 301 (1966) ("A hotel room can clearly be the object of Fourth Amendment protection as much as a home . . . ."); *United States v. Wicks*, 995 F.2d 964, 969 (10th Cir. 1993) ("A motel room may be considered a 'dwelling' for purposes of the validity of a warrantless arrest."); *United States v. Owens*, 782 F.2d 146, 149 (10th Cir. 1986) ("It is settled that a motel guest is entitled to constitutional protection against unreasonable searches of his or her room.").

Had Banks not been evicted from his hotel room prior to the search, the

search would have violated the Fourth Amendment unless it fell within one of the recognized exceptions to the warrant requirement. *See United States v. Edwards*, 242 F.3d 928, 937 (10th Cir. 2001). The government contends the warrantless search was justified because the police officers had probable cause and exigent circumstances existed. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."); *see also Wicks*, 995 F.2d at 969 ("Even with probable cause, absent consent or exigent circumstances police officers may not enter a dwelling to make an arrest.").

We need not consider whether there were exigent circumstances, however, because Banks was evicted prior to the search and thus, he did not have a reasonable expectation of privacy in his room at the time of the search. In *United States v. Croft*, we explained:

> [A]lthough it is clearly established that a guest in a hotel or motel room is entitled to protection against unreasonable searches and seizures . . . the protection is dependent on the right to private occupancy of the room. When the rental period has elapsed, the guest has completely lost his right to use the room and any privacy associated with it.

429 F.2d 884, 887 (10th Cir. 1970) (citations omitted). Though *Croft* involved an expiration of the occupancy period rather than an eviction, its reasoning is equally applicable here. Where an occupant of a hotel room is evicted, he or she no longer has a right to privacy in the room, and there can be no invasion thereof.

In *United States v. Rambo*, the Eighth Circuit concluded a defendant's Fourth Amendment rights had not been violated by a post-eviction search of his hotel room. 789 F.2d 1289 (8th Cir. 1997). The court explained:

> Rambo was asked to leave the hotel by the officers, acting at the request of and on behalf of the hotel manager, because of his disorderly behavior. Thus, Rambo was justifiably ejected from the hotel . . . and the rental period therefore had terminated. At that time, control over the hotel room reverted to the management. Rambo no longer had a reasonable expectation of privacy in the hotel room, and therefore is now without standing to contest the officers' entry (search) into the hotel room. Rambo cannot assert an expectation of being free from police intrusion upon his solitude and privacy in a place from which he has been justifiably expelled.

*Id.* at 1295-96 (citations omitted); *see also Young v. Harrison*, 284 F.3d 863, 869 (8th Cir. 2002) (concluding "[the defendant]'s constitutional rights were not violated by the officers' entry into his hotel suite because when a hotel guest is properly evicted he loses the Fourth Amendment's protection against warrantless entry"); *United States v. Haddad*, 558 F.2d 968, 975 (9th Cir. 1977) ("Appellant had no reasonable expectation of privacy with respect to a room from which he had been justifiably ejected . . . . Once ejected for good cause, the room reverted to the control of the management, and the former occupant had no continuing right to privacy in the room."). Assuming the eviction was proper, which we must, the post-eviction search of Banks' hotel room did not violate his Fourth Amendment rights.

B.     Admission of Lay Opinion Testimony

A trial, the court allowed Officer Kelley to opine that Banks was "most definitely" engaged in drug dealing, concluding this was a proper lay opinion. (R. Vol. V at 73.)  Banks argues this was improper lay opinion testimony and should have been excluded.  The government contends the testimony was properly admitted or, if its admission was error, it was harmless because the evidence of Banks' guilt was overwhelming.  We agree with Banks that this evidence should have been excluded, but we also agree with the government that the error was harmless.

"[T]he admission of lay opinion testimony is within the sound discretion of the trial court and will not be overturned on appeal absent a clear abuse of discretion."  *United States v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir. 1985). Pursuant to Rule 701 of the Federal Rules of Evidence, a lay witness may testify "in the form of opinions or inferences . . . which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[2]

The third requirement of Rule 701 was added by amendment in 2000 "to

_____

[2]  By contrast, Rule 702 allows a "witness qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 Adv. Comm. Notes (2000 Am.). As we described in *Lifewise Master Funding v. Telebank*:

> When the subject matter of proffered testimony constitutes scientific, technical, or other specialized knowledge, the witness must be qualified as an expert under Rule 702. Rule 701 applies only if the witness is not testifying as an expert. Indeed, the rule expressly prohibits the admission of testimony as lay witness opinion if it is based on specialized knowledge. In other words, a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person.

374 F.3d 917, 929 (10th Cir. 2004) (internal quotations and citations omitted).

The government first attempted to qualify Officer Kelley as an expert. It established that Officer Kelley had worked for the Tulsa Police Department for seven years and was in the special investigations division of the "vice" department, which covers "narcotics, prostitution, gambling, that kind of stuff." (R. Vol. V at 58.) Kelley testified he had specialized training in narcotics, having attended a basic investigator school; a "marijuana grow school put on by the Canadian Mounted Police"; "[a]n A1 conference . . . focused completely on narcotics investigations"; and various in-service trainings. (*Id.* at 59.) He testified to having been involved in over one hundred cases involving methamphetamine. After laying this foundation, the government asked: "Officer Kelley, based on your training and experience, do you have an opinion concerning

all of the items that you found [in Banks' apartment] in connection with the distribution or possession with intent to distribute methamphetamine?" (R. Vol. V at 71.) Banks objected on the grounds that Kelley had not been qualified as an expert. The court sustained the objection.

The government then questioned Officer Kelley further about his training and experience. Kelley testified: "I've been to in-service [training] here at the Tulsa Police Academy that was solely based on drug identification, methods of distribution. And then at the A1 conference, which was a week long, there were four classes a day and they covered the various ways of distributing . . . [and] the transportation routes that were being taken from various locations into the United States." (*Id.*) He testified he had been involved with "[p]robably 25" cases involving drug trafficking. (*Id.* at 72.)

After this questioning, the government again asked Officer Kelley to give an opinion "based on [his] training and experience" concerning the items found in Banks' apartment. (*Id.*) Banks objected at a bench conference: "I object that I was not aware we were going to have expert testimony from the vice officer. I don't have a report from the man or anything." (*Id.* at 73.) The government replied that Officer Kelly is "not an expert" and should be allowed to "give an opinion based on his training and experience." (*Id.*) The court overruled Banks' objection, stating: "It's just a lay opinion based on experience and training." (*Id.*) Kelley then testified: "I believe that the defendant, Dallion Banks, was most

definitely distributing illegal methamphetamine for the purpose of obtaining money." (*Id.*)

As the government's questioning makes clear, Officer Kelley's opinion about Banks' guilt was based on his specialized training and experience. Thus, this testimony should have been considered expert testimony under Rule 702, not lay opinion testimony under Rule 701. *See* Fed. R. Evid. 701 Adv. Comm. Notes (2000 Am.) ("[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (quotations omitted). Moreover, Banks did not receive a report identifying Kelley as an expert witness, as required by Rule 16 of the Federal Rules of Criminal Procedure, therefore Kelley could not have testified as an expert witness. Rule 701 is not designed to provide a runaround to the expert witness requirements. *See* Fed. R. Evid. 701 Adv. Comm. Notes (2000 Am.) ("By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements . . . by simply calling an expert witness in the guise of a layperson."). Where, as here, a party fails to follow the expert disclosure requirements, a witness' testimony based on his specialized training cannot simply be recharacterized as lay opinion testimony and admitted under Rule 701.

Even if Officer Kelley had been qualified as an expert and the expert disclosure requirements were satisfied, it still would have been error to allow him to testify Banks was "most definitely" guilty of drug trafficking. Rule 704 of the Federal Rules of Evidence generally allows an expert to offer opinion evidence even if "it embraces an ultimate issue to be determined by the trier of fact." Fed. R. Evid. 704(a). However, the rules "do not . . . allow an expert to offer testimony that merely tells the jury what result they should reach . . . ." *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993). "Expert testimony of this type is often excluded on the grounds that it states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law." *Id.*; s*ee, e.g., United States v. Anderskow*, 88 F.3d 245, 250 (3d Cir. 1996) (concluding it was error for a witness to testify that the defendant "must have known" fraud was occurring as this opinion essentially turned the witness "into a thirteenth juror" and was not helpful to a trier of fact called upon to evaluate the same evidence upon which the witness based his opinion) (quotations omitted).

Moreover, where an expert witness is "testifying with respect to the mental state or condition of a defendant in a criminal case," he may not "state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of a crime charged or of a defense thereto." Fed. R. Evid. 704(b). Here, Banks was charged with possession with intent to

-14-

distribute methamphetamine (Counts I and III) and possession of firearms in furtherance of a drug trafficking crime (Counts II and IV). In order to be convicted of Counts I and III, the government had to prove beyond a reasonable doubt that Banks intended to distribute methamphetamine. *See United States v. Harris*, 369 F.3d 1157, 1163 (10th Cir. 2004). Whether Banks had the requisite intent is an "ultimate issue[ ] . . . for the trier of fact alone," *see* Fed. R. Evid. 704(b), and thus, was not a proper subject for expert testimony.

We must consider whether the court's error in allowing Officer Kelley to opine as to Banks' guilt was harmless. "In conducting a harmless error review, we review the record *de novo*." *United States v. Flanagan*, 34 F.3d 949, 955 (10th Cir. 1994).

> [We] examine the entire record, focusing particularly on the erroneously admitted statements. The question is not whether, omitting the inadmissible statements, the record contains sufficient evidence for a jury to convict the defendant. Rather, we must discern whether the statements, in light of the whole record, substantially influenced the outcome of the trial, or whether we are left in grave doubt as to whether it had such an effect. If our answer to either of these questions is yes, the error requires reversal.

*United States v. Tome*, 61 F.3d 1446, 1455 (10th Cir. 1995) (citations and quotations omitted). "[T]he government has the burden of proving that the non-constitutional error was harmless." *Flanagan*, 34 F.3d at 955.

Here, Officer Kelley's testimony did not have a substantial influence on the outcome of the trial because the evidence of Banks' guilt was overwhelming. The

-15-

police officers testified they found, in addition to large quantities of drugs and guns, numerous empty baggies with symbols on them, baggies containing small amounts of methamphetamine, notebook sheets with notations of people owing money, and a large set of digital scales in Banks' apartment. Brittany Osborn testified she lived with Banks and they distributed drugs together. Osborn identified the empty baggies found in Banks' apartment as the type Banks used to package methamphetamine for distribution. She also identified the notebook sheets as "owe" sheets, listing the various people who owed Banks money for drugs he supplied to them. (R. Vol. V at 96.) Osborn testified Banks had traded drugs for firearms and used firearms for protection. Michael Moniz testified that when he was arrested at the hotel on January 12, 2006, he had methamphetamine in his possession that he had received from Banks earlier in the day. He testified Banks was his sole supplier of methamphetamine. Shanna Wadriski identified empty baggies with the number seven and Playboy bunny symbols on them as being the type Banks used to package methamphetamine and testified she received methamphetamine from Banks in those types of baggies. Banks testified in his defense and, while he denied ever having sold methamphetamine, he admitted he had handed someone a bag of methamphetamine and told him to pay for it later. He also admitted he could have been responsible for giving Wadriski the methamphetamine she was found with when she was arrested on March 1, 2006. And he admitted that he owned the guns found in the hotel room.

Banks contends there were credibility problems with Osborn, Moniz and Wadriski, because, among other things, each admitted to being a heavy drug user and Osborn admitted to being a drug dealer. It is, of course, for the jury to assess the credibility of witnesses. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2513 (2007). Moreover, the jury had the ability to evaluate Banks' credibility, as he testified in his defense. There is no indication that Officer Kelley's testimony substantially influenced the jury in its credibility evaluations. On the contrary, we are confident the result would have been the same even if Kelley's opinion had been excluded. Where, as here, "there is an abundance of evidence regarding the defendant's guilt, the nonconstitutional error will be deemed harmless." *United States v. Solomon*, 399 F.3d 1231, 1238 (10th Cir. 2005).

    **AFFIRMED**.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge